# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 10-922

JOE L. MONZINGO, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 10, 2012                                    Decided November 21, 2012)

*Diane B. Kadlec*, of Valley Stream, New York, was on the brief for the appellant.

*Jonathan G. Scruggs*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Joan Moriarty*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge,* and HAGEL and LANCE, *Judges*.

This opinion was filed per curiam.  KASOLD, *Chief Judge,* filed a concurring opinion.

PER CURIAM:  Veteran Joe L. Monzingo appeals through counsel a February 25, 2010, decision of the Board of Veterans' Appeals (Board) that denied benefits for bilateral hearing loss. Mr. Monzingo argues that the Board (1) provided inadequate reasons or bases for denying service connection, (2) relied on an inadequate medical report, and (3) clearly erred in specifically finding that Mr. Monzingo's hearing acuity improved during service.  Underlying Mr. Monzingo's first argument is a contention that two reports published with partial VA involvement should be deemed constructively part of the record before the Board, a question that prompted the convening of a panel to decide this appeal.  *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990) (holding that a panel decision is necessary to clarify an existing rule of law).  For the reasons stated below, the Board decision will be affirmed.

## I. FACTS

Mr. Monzingo served on active duty in the U.S. Army from October 1966 to October 1968. An August 1966 pre-induction examination report reflects normal hearing acuity in his left ear and some hearing loss in his right ear, specifically, 45 decibels at the 4,000 Hertz frequency. An August 1968 separation examination report reflects normal hearing acuity in his left ear and some hearing loss in his right ear, specifically, 35 decibels at the 4,000 Hertz frequency.

In 1984, Mr. Monzingo requested disability compensation for bilateral hearing loss and tinnitus. In a July 1984 decision, the VA regional office (RO) granted service connection for tinnitus but denied benefits for bilateral hearing loss. The RO's decision was not appealed and became final. Following a June 2007 request to reopen his hearing loss claim, Mr. Monzingo was afforded a VA audiological examination in February 2008. The VA examiner diagnosed Mr. Monzingo with bilateral hearing loss and opined that his "left ear hearing loss is not caused by or a result of acoustic trauma in service," and that his "right ear hearing loss was not aggravated by acoustic trauma in service." Record (R.) at 75. The RO subsequently reopened but denied Mr. Monzingo's claim.

The Board decision on appeal found that benefits for hearing loss remained unwarranted. More specifically, the Board noted that (1) Mr. Monzingo entered and exited service with normal hearing in his left ear, (2) his left ear hearing loss was not diagnosed until decades after his discharge from service, (3) he entered service with preexisting hearing loss in his right ear (45 decibels at the 4,000 Hertz frequency), and (4) he left service with slightly improved hearing in his right ear (35 decibels at the 4,000 Hertz frequency). The Board also concluded that a September 2000 VA hearing aid evaluation report did not contain an opinion on the etiology of Mr. Monzingo's hearing loss and therefore was not highly probative on that question. Finally, the Board determined that the February 2008 VA examination report was highly probative in finding that Mr. Monzingo's bilateral hearing loss was not caused or aggravated by service.

## II. PARTIES' ARGUMENTS

Mr. Monzingo contends that the Board's statement of reasons or bases is inadequate because the Board did not (1) address the possibility that his service-connected tinnitus constitutes evidence of continuous symptomatology of hearing loss, or (2) explain its reliance on his separation

2

examination report in light of the fact that the report reflected improved hearing acuity during service and his assertion that hearing tests at that time generally were inaccurate. In support of these contentions, he relies on a 2006 report, entitled *Noise and Military Service: Implications for Hearing Loss and Tinnitus* (*Noise and Military Service*), prepared by the Committee on Noise-Induced Hearing Loss and Tinnitus Associated with Military Service from World War II to the Present (the Committee), and a 1982 report, entitled *Tinnitus: Facts, Theories, and Treatments* (*Tinnitus*), prepared by Working Group 89 of the Committee on Hearing, Bioacoustics, and Biomechanics of the Commission on Behavioral and Social Sciences and Education of the National Research Council (Working Group 89). Mr. Monzingo asserts that these reports constitute evidence favorable to his claim that was constructively in the possession of the Board and should have been, but was not, addressed by the Board. *See Thompson v. Gober*, 14 Vet.App. 187, 188 (2000) (holding that the Board must address all material evidence potentially favorable to the claimant); *Bell v. Derwinski*, 2 Vet.App. 611, 612 (1992) (per curiam order) (setting forth the doctrine of constructive possession). In the alternative, he asserts that the Court should either take judicial notice of the findings of these reports and consider them in its review or remand the matter for the Board to address them in the first instance. *See Smith v. Derwinski*, 1 Vet.App. 235, 238 (1991) (holding that the Court "may take judicial notice of facts not subject to reasonable dispute").

The Secretary disputes Mr. Monzingo's contention that the reports were constructively before the Board. He notes that, although *Noise and Military Service* was commissioned in part by VA at the direction of Congress, the findings were neither accepted nor rejected by the Secretary for VA purposes; rather, they were passed on to Congress for its use. He also argues that, although a VA employee was a member of Working Group 89 and participated in the preparation of *Tinnitus*, that report was neither contracted by nor prepared for VA use. Citing *Brannon v. Derwinski*, 1 Vet.App. 314, 316 (1991), the Secretary also contends that the findings in the reports are not facts "of universal notoriety," such that the Court may not take judicial notice of them.

In support of his second argument, Mr. Monzingo asserts that the February 2008 VA audiology report is inadequate because it lacks detail and rationale, and because the examiner failed to comment on the findings of various studies on hearing loss. Conversely, citing *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007), the Secretary contends that the report is adequate because the examiner

reviewed Mr. Monzingo's medical history, performed an audiometric examination, rendered a conclusion, and provided sufficient rationale.

In support of his third argument, Mr. Monzingo asserts that the Board clearly erred in specifically finding that his hearing acuity improved during service because *Noise and Military Service* states that hearing loss due to acoustic trauma is irreversible. The Secretary responds that the medical findings in *Noise and Military Service* are not for consideration because, again, that report was not actually or constructively before the Board and its findings are not facts of which the Court may take judicial notice.

## III. ANALYSIS

Mr. Monzingo's primary argument relies on select findings from *Noise and Military Service* and *Tinnitus*. Because both parties agree that these reports were not actually in the record before the Board, we first address whether they were constructively in the Board's possession, and whether (and to what extent) the Court may take judicial notice of the reports or the findings contained therein.

### A. Constructive Possession

#### *1. Law*

Section 7252(b) of title 38, U.S. Code, provides that "[r]eview in the Court shall be on the record of proceedings before the Secretary and the Board." Early in its jurisprudence, the Court recognized that certain documents not actually in the record before the Board would be deemed constructively before the Board, because the Court could not "'accept the Board being "unaware" of certain evidence, especially when such evidence is in possession of the VA, and the Board is on notice as to its possible existence and relevance.'" *Bell*, 2 Vet.App. at 612 (quoting *Murincsak v. Derwinski*, 2 Vet.App. 363, 372-73 (1993)). *Bell* involved four documents not contained in the record before the Board, but proffered by the appellant on appeal: (1) A VA report of contact form, (2) a letter from a VA doctor, (3) a letter from VA to the appellant, and (4) a written statement by the appellant submitted to VA during the pendency of her appeal. *Id.* "[B]ecause three of the four items were clearly generated by the VA," and "the fourth item was submitted to the VA by appellant as part of her claim," the Court found that the Secretary had constructive possession of those documents. *Id.* at 613. The Court then held generally that, "where the documents proffered by the

4

appellant are within the Secretary's control and could reasonably be expected to be a part of the record before the Secretary and the Board, such documents are, in contemplation of the law, before the Secretary and the Board." *Id.* (internal quotation marks omitted).

The *Bell* doctrine was applied in *Bowey v. West*, 11 Vet.App. 106, 107-08 (1998) (per curiam order), to two documents not contained in the record before the Board, but proffered on appeal: (1) A report prepared by the National Institute for Occupational Safety and Health (NIOSH) for the Defense Nuclear Agency (DNA) regarding radiation that was cited in a DNA letter relied upon by the Board, and (2) a medical treatise regarding radiation that was cited in a VA letter relied upon by the Board. The Court in *Bowey* interpreted *Bell* as having pronounced two rules for determining whether a document was constructively before the Board: (1) A "specific" rule that a document had to be clearly generated by VA or submitted to VA by the appellant, and (2) a "broader" rule that a document had to be within the Secretary's control and reasonably expected to be part of the record. *Bowey*, 11 Vet.App. at 108. The Court found that neither the NIOSH report nor the medical treatise satisfied either of the rules in *Bell*, and, therefore, neither could be deemed constructively before the Board. In particular, the Court determined that "[i]t is not reasonable to expect the Secretary to have investigated, gathered, and considered [such documents] where those documents were merely referenced in expert opinion letters." *Id.* at 109. Significantly, the Court also noted that the Board's familiarity with these documents from other cases was inapposite because "the connection [of these documents] to the appellant's case is too tenuous." *Id.*

The constructive possession doctrine was further refined in *Goodwin v. West*, 11 Vet.App. 494, 495 (1998) (per curiam order), where three documents[1] not contained in the record before the Board were proffered on appeal: (1) A letter purportedly sent to VA by the appellant's representative, (2) VA documents relating to the claim of another veteran, and (3) a statement purportedly sent to VA by the appellant's representative. The Court found that the first and third documents were not generated by VA and that there was no evidence that the documents were actually received by VA. With respect to the second documents, the Court conceded that they were generated by VA, but found that the documents "could not reasonably be expected to be a part of the record before the

---

[1] A fourth document proffered on appeal was found to actually have been in the record before the Board. *Id.* at 496.

Secretary and the Board" because they were "not submitted to VA with regard to the appellant's claim" and they "relate[d] to claims for VA benefits for an individual other than the appellant." *Id.* at 496 (internal quotation marks omitted) (citing *Bowey*, 11 Vet.App. at 109, for the proposition that a document cannot reasonably be expected to be a part of the record where "the connection to the appellant's case is too tenuous"). In sum, *Goodwin* clarified that, even when a document is generated by VA, it will not be considered constructively before the Board in a particular claimant's case unless the document has a direct relationship to the claimant's appeal. Indeed, to hold otherwise would essentially lead to any reports on diseases or injuries contained in VA libraries[2] being deemed constructively before the Board in every case involving a claim arising from the disease or injury addressed in such reports; such an application of the constructive possession doctrine places an impossible burden on the Board – especially given its obligation to address the relevant evidence of record when providing reasons and bases.

## 2. Application of Law

There is no dispute that *Noise and Military Service* was supported by a contract between the National Academy of Sciences and VA and submitted to VA by the Committee pursuant to Public Law No. 107-330, § 104(c) (Dec. 6, 2002) ("The Secretary of Veterans Affairs shall seek to enter into an agreement with the National Academy of Sciences [to issue a report on hearing loss and military service] . . . . [T]he National Academy of Sciences shall submit to the Secretary [its] report . . . ."). However, beyond noting that VA sponsored and received a copy of the report, Mr. Monzingo offers no other support for his argument that the report was constructively before the Board. As noted by the Secretary at oral argument, the report's findings were "those of the author(s) and do not necessarily reflect the view of the organizations or agencies that provided support for this project." *Noise and Military Service* at *ii*, available at: http://www.nap.edu/ openbook.php?record_id=11443&page=R2. Moreover, the report is not specific to Mr. Monzingo;

---

[2]According to the U.S. Office of Personnel Management, VA has a total of 318,144 employees, as of March 2012. Of this number, 283,258 are employed with the Veterans Heath Administration (VHA) and 20,254 are employed with the Veterans Benefits Administration (VBA). Additionally, there are 515 employees at the Board and 729 employees at VA's Office of General Counsel (although many of these attorneys do not work directly with benefits adjudication issues). Given the size and complexity of VA, it is unreasonable to assume that adjudicators of the VBA and Board, as opposed to perhaps employees of VHA or the Office of the Secretary, were aware of the existence or importance of the report in this case.

6

indeed, the only connection between the report and Mr. Monzingo's claim is that the report generally discusses hearing loss as it relates to military service and Mr. Monzingo's claim is for benefits for hearing loss that he asserts was incurred in military service. This connection is too tenuous to reasonably support any expectation that *Noise and Military Service* would be part of the record before the Board in every hearing loss or tinnitus claim, or otherwise support a finding that it is deemed constructively part of the record before the Board in his claim. *See Goodwin*, 11 Vet.App. at 496; *Bowey*, 11 Vet.App. at 109.

Similarly, with respect to *Tinnitus*, other than noting that a VA employee was a member of Working Group 89 and speculating that the Board would or should be familiar with this report, Mr. Monzingo offers no other support for his argument that the report was constructively before the Board. It was not prepared for or commissioned by VA, and it bears no relationship to Mr. Monzingo's claim other than its general discussion of the relationship between tinnitus and hearing loss. *See Tinnitus* at *ii*, available at: http://www.nap.edu/openbook.php?record_id=81&page=R2. Pursuant to *Goodwin*, *Bowey*, and *Bell*, this is too tenuous a connection and does not warrant a reasonable expectation that it would be part of the record before the Board, absent Mr. Monzingo's submission of the document to VA or his request that it be obtained.

Accordingly, Mr. Monzingo fails to demonstrate that the Board was constructively in possession of *Noise and Military Service* or *Tinnitus* in this case. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant bears the burden of demonstrating error on appeal); *see also Goodwin*, *Bowey*, and *Bell*, all *supra*.

## B. Judicial Notice and Request for Remand

Alternatively, Mr. Monzingo argues that the Court should take judicial notice of the findings within *Noise and Military Service* and *Tinnitus* and either consider them in its review or remand his claim for the Board to address them in the first instance.

The Court may take judicial notice of facts of universal notoriety that are not subject to reasonable dispute. *See Brannon* and *Smith*, *supra*; *see*, *e.g.*, *Crain v. Principi*, 17 Vet.App. 182, 189 (2003) (taking judicial notice of Zip Code numbers for different cities, as available on the U.S. Postal Service's Web site). Accordingly, the Court will take judicial notice of the facts that (1) VA was ordered by Congress to contract for *Noise and Military Service*, (2) both *Noise and Military Service*

7

and *Tinnitus* have been published, and (3) VA received a copy of *Noise and Military Service* from the Committee. However, the findings and conclusions within these reports are neither facts of universal notoriety nor facts not subject to reasonable dispute, despite Mr. Monzingo's assertions to the contrary. *See* SAMUEL ARBESMAN, THE HALF-LIFE OF FACTS: WHY EVERYTHING WE KNOW HAS AN EXPIRATION DATE, 208 (2012) ("[M]any medical schools inform their students that within several years half of what they've been taught will be wrong, and the teachers just don't know which half.") Accordingly, the Court is not permitted to take judicial notice of those findings and conclusions and will therefore not evaluate the Board's decision through the lens of those findings and conclusions. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) ("[A]ppellate tribunals are not appropriate fora for initial factfinding.").

Moreover, because these reports and the findings therein were not raised by Mr. Monzingo below or reasonably raised by the record, the Board did not err in not addressing them. *See Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (holding that the Board must address issues raised by the appellant or reasonably raised by the record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). Inasmuch as the findings in these reports have not been shown to be of universal notoriety and because Mr. Monzingo was provided a medical examination that, as discussed below, he fails to demonstrate is inadequate to support the Board's decision, we will not exercise our discretion to remand this matter so that the Board might consider these reports. *See Maggitt v. West*, 202 F.3d 1370, 1377-78 (Fed. Cir. 2000) (holding that the Court has discretion to remand issues raised for the first time on appeal for further development and adjudication by VA in the first instance); *see also Sacks v. West*, 11 Vet.App. 314, 317 (1998) (holding that treatise materials generally are not specific enough to show nexus); *Herlehy v. Brown*, 4 Vet.App. 122, 123 (1993) (explaining that, in general, medical opinions directed at specific patients are more probative than medical treatises).

### C. Reasons or Bases

Mr. Monzingo argues that the Board provided inadequate reasons or bases for its decision because it did not (1) address the possibility that his service-connected tinnitus constitutes evidence of continuous symptomatology of hearing loss, or (2) explain its reliance on his separation examination report when that report reflected improved hearing acuity since separation and hearing

8

tests at that time generally did not adequately identify acoustic trauma. However, Mr. Monzingo cites no *record* evidence, only *Tinnitus*, in support of his suggestion that his tinnitus might reflect continuity of hearing loss. Similarly, he cites only *Noise and Military Service* in support of his theory that the hearing tests provided at the time of his separation from service were inadequate and that hearing acuity cannot improve after acoustic trauma. Because (1) these arguments are based on evidence that the Court has determined was outside the actual or constructive record before the Board, (2) Mr. Monzingo fails to demonstrate that he raised the underlying issues below, and (3) Mr. Monzingo has not demonstrated that those issues were reasonably raised by the record, the Court concludes that the Board did not err in not addressing these issues. *See Robinson, Hilkert*, and *Bell*, all *supra*.

To the extent that Mr. Monzingo's argument regarding the relationship between tinnitus and hearing loss encompasses a contention that this issue reasonably was raised by the record, we note that tinnitus and hearing loss are recognized by the Secretary as separate and distinct disabilities, and Mr. Monzingo fails to identify any competent record evidence supporting his assertion that his tinnitus is evidence of his hearing loss. *See Hilkert*, *supra*; *compare* 38 C.F.R. § 4.85 (2012) ("Evaluation of hearing impairment"), *with* 38 C.F.R. § 4.87, Diagnostic Code (DC) 6260 (2012) ("Tinnitus"); *see* 38 C.F.R. § 4.14 (2012) (stating the Secretary's practice to avoid "the evaluation of the same manifestation under different diagnoses"); *VA Adjudication Procedures Manual* (M21-1MR), pt. 3, subpt. 4, ch. 4, § B(12)(f) (providing guidance to VA adjudicators that, even where an examiner states that tinnitus is a symptom of hearing loss, tinnitus is to be evaluated separately under DC 6260).

Overall, Mr. Monzingo fails to demonstrate that the Board's statement of reasons or bases frustrates judicial review. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (holding that the Board's statement "must be adequate to enable claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"); *see also Hilkert*, *supra*.

### D. Adequacy of VA Medical Opinion

Mr. Monzingo essentially posits that the February 2008 VA examination report is inadequate because it lacks detail and rationale, and because the examiner failed to comment on the findings of various medical studies regarding hearing loss. The February 2008 VA examination report notes,

inter alia, that (1) the examiner reviewed the claims file and medical records, (2) Mr. Monzingo served in the military from 1966 to 1968, (3) Mr. Monzingo reported a positive history of noise exposure in service, (4) service medical records indicated no significant change in hearing between enlistment and separation, and (5) Mr. Monzingo complained of tinnitus, but not hearing loss, in service. The examiner also performed an audiometric examination, recorded Mr. Monzingo's speech recognition test results, and diagnosed bilateral sensorineural hearing loss. Finally, "based on clinical experience and evidence found in military medical records," the examiner concluded that Mr. Monzingo's left ear hearing loss was "not caused by or a result of acoustic trauma in service" and that his right ear hearing loss was "not aggravated by acoustic trauma in service." R. at 75.

To the extent that Mr. Monzingo argues that the examiner did not provide a *detailed* review of the medical history or the severity of his current hearing loss, he confuses the duties of a medical examiner with those of a VA adjudicator. *See Moore v. Nicholson*, 21 Vet.App. 211, 218 (2007) ("The medical examiner provides a disability evaluation and the rating specialist interprets medical reports in order to match the rating with the disability."), *rev'd on other grounds sub nom. Moore v. Shinseki*, 555 F.3d 1369 (Fed. Cir. 2009); *see also Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 304 (2008) ("Both VA medical examiners and private physicians offering medical opinions in veterans benefits cases are nothing more or less than expert witnesses."); *Gabrielson v. Brown*, 7 Vet.App. 36, 40 (1994) (noting that a medical opinion is "only that, an opinion" providing medical evidence). There is no requirement that a medical examiner comment on every favorable piece of evidence in a claims file. *See Acevedo v. Shinseki*, 25 Vet.App. 286, 293 (2012) (noting that the law imposes no reasons-or-bases requirement on examiners). Rather, examination reports are adequate when they sufficiently inform the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion. *See D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008) ("An opinion is adequate where it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's 'evaluation will be a fully informed one.'" (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994)); *see also Nieves-Rodriguez*, 22 Vet.App. at 301 ("[An adequate] medical examination report must contain not only clear conclusions with supporting data, but also a reasoned medical explanation connecting the two." (citing *Stefl v. Nicholson*, 21 Vet.App. 120, 124 (2007)). Moreover, the severity of Mr. Monzingo's

10

current hearing loss and his exposure to noise in service are not at issue in this appeal; both facts were conceded by the Board. *See* R. at 12-13.[3]

Furthermore, although Mr. Monzingo correctly notes that the rationale provided by the examiner did not explicitly lay out the examiner's journey from the facts to a conclusion, his argument that this renders the examination inadequate is unpersuasive. Although the examiner's statement only noted that she applied her medical judgment to the evidence in military records, the medical report must be read as a whole, *see Acevedo*, 25 Vet.App. at 294, and–on review of the report as a whole–it is clear that the examiner based her opinion on the lack of any significant in-service change in hearing; the length of time between service and the onset of hearing loss, and her medical experience that the onset of hearing loss under such circumstances was not due to noise exposure while in service. *See* R. at 72 ("Military medical records indicate the veteran had no significant change in hearing sensitivity from enlistment to separation. Records indicate veteran complained of tinnitus in service but not hearing loss."), 73 ("Veteran denies . . . head/ear trauma."), 75 ("Veteran's . . . hearing loss is not caused by or a result of [or] . . . aggravated by acoustic trauma in service . . . . Opinion given based on clinical experience and evidence found in military medical records."). Mr. Monzingo may not agree with the examiner, but he fails to demonstrate that he has the competence to rebut her opinion, *see Jandreau v. Nicholson*, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (noting general competence of laypersons to testify as to symptoms but not medical diagnoses), and he cites no record evidence indicating that the examiner was incompetent, had erroneous facts, or misinformed the Board. *See Rizzo v. Shinseki*, 580 F.3d 1288, 1291 (Fed. Cir. 2009)*; D'Aries*, *supra*.

Although the examiner did not comment on the findings of various medical studies regarding

---

[3] To the extent that Mr. Monzingo contends that the Board did not consider the favorable evidence that he believes was overlooked by the examiner, the Court does not agree. *See Gabrielson*, 7 Vet.App. at 40 (holding that the Board cannot "evade [its] statutory responsibility [to state the reasons or bases for its conclusions] merely by adopting [a medical opinion] as its own" where the medical opinion "fails to discuss all the evidence which appears to support [the] appellant's position"). The Board expressly set forth the results of Mr. Monzingo's most recent hearing evaluation and acknowledged that his hearing loss was sufficiently severe to qualify as a disability for VA purposes. R. at 12. The Board also addressed Mr. Monzingo's hearing loss history, noting that he (1) entered service with some level of hearing loss in his right ear, (2) was exposed to noise in service, and (3) received disability benefits for tinnitus as a result. R. at 13. All told, it is clear that, even if the February 2008 VA examiner did not address some of the relevant favorable evidence in his claims file, as Mr. Monzingo contends, the Board satisfied its duty to do so. *See Moore*, 21 Vet.App. at 218; *Gabrielson*, 7 Vet.App. at 40.

11

hearing loss, the general presumption of competence includes a presumption that physicians remain up-to-date on medical knowledge and current medical studies. *See* AMERICAN MEDICAL ASSOCIATION CODE OF MEDICAL ETHICS, Principle of Medical Ethics V ("A physician shall continue to study, apply, and advance scientific knowledge, maintain a commitment to medical education . . . ."); *see also Sickels v. Shinseki*, 643 F.3d 1362, 1366 (Fed. Cir. 2011) (noting that, in the absence of clear evidence to the contrary, VA medical examiners are presumed competent); *Rizzo v. Shinseki*, 580 F.3d 1288, 1291 (Fed. Cir. 2009) (same). This same principle applies to audiologists and hearing loss professionals as well. *See* AMERICAN ACADEMY OF AUDIOLOGY, Code of Ethics (http://www.audiology.org/resources/documentlibrary/Pages/codeofethics.aspx (last visited Oct. 22, 2012)), Principle 2 ("Members shall maintain high standards of professional competence in rendering services."), Rule 2f ("Individuals shall maintain professional competence, including participation in continuing education."). Contrary to Mr. Monzingo's contention, the fact that the February 2008 VA examiner did not explicitly cite any studies is not evidence that she was unaware of such studies, and is not a basis for finding the examination report inadequate. *See Sickels, Rizzo,* and *D'Aries*, all *supra*.

Furthermore, even if a medical opinion is inadequate to decide a claim, it does not necessarily follow that the opinion is entitled to absolutely no probative weight. If the opinion is based on an inaccurate factual premise, then it is correct to discount it entirely. *See Reonal v. Brown*, 5 Vet.App. 458, 461 (1993). However, if the opinion is merely lacking in detail, then it may be given some weight based upon the amount of information and analysis it contains. *See Nieves-Rodriguez*, 22 Vet.App. at 302; *Washington v. Nicholson*, 19 Vet.App. 362, 368 (2005) (citing *United States v. Welsh*, 774 F.2d 670, 672 (4th Cir.1985) ("The probative value of evidence is its tendency . . . to establish the proposition that it is offered to prove." (internal quotations omitted))). Otherwise, a favorable medical opinion from a veteran's doctor that was unsupported by analysis would not be sufficient to trigger the Secretary's duty to assist. *See McLendon v. Nicholson*, 20 Vet.App. 79, 83 (2006) (holding that 38 U.S.C. § 5103A(d)(2) requires that a medical opinion to be provided where the evidence indicates that a claim has merit but is insufficient to grant the claim). Thus, VA is not permitted to completely ignore even an "inadequate" opinion or examination, whether it is in favor or against a veteran's claim. The Board is obligated to consider *all* pertinent medical and lay

12

evidence. *See Hogan v. Peake*, 544 F.3d 1295, 1298 (Fed. Cir. 2008) (citing 38 C.F.R. § 3.303(a)). VA *is* required, however, to return VA examination reports for clarification where the report contains insufficient detail or where the diagnosis is not supported by the report's findings, 38 C.F.R. § 4.2 (2012), and to return private examinations under more limited circumstances, *Savage v. Shinseki*, 24 Vet.App. 259, 269 (2011). Here, Mr. Monzingo has not demonstrated, as is his burden, that the February 2008 VA examination report was so lacking in detail as to require VA to return it for clarification. 38 U.S.C. § 5107(a); *Fagan v. Shinseki*, 573 F.3d 1282, 1287 (Fed. Cir. 2009) (holding that it is the claimant's general evidentiary burden to establish all elements of the claim).

Overall, the Board did not clearly err by finding the February 2008 VA examination report adequate and probative, and relying on it in support of its decision. *See D'Aries*, 22 Vet.App. at 104 ("Whether a medical examination is adequate is a finding of fact, which this Court reviews under the 'clearly erroneous' standard.").

### E. Improved Hearing Acuity

Mr. Monzingo's final argument is that the Board clearly erred in finding that his hearing acuity improved during service because *Noise and Military Service* states that hearing loss due to acoustic trauma is irreversible. However, as stated above, *Noise and Military Service* was not actually or constructively before the Board and the Court may not take judicial notice of the Committee's findings contained in that report because they have not been shown to be of universal notoriety or not subject to reasonable dispute. Succinctly stated, Mr. Monzingo fails to identify any competent *record* evidence demonstrating that the Board's finding that his hearing acuity improved during service is clearly erroneous. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'A finding is "clearly erroneous" when . . . the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))); *see also Hilkert*, *supra*. Moreover, even if it were medically impossible for hearing acuity to *improve* after acoustic trauma, the logical inference is then that the hearing loss in this case was not caused by acoustic trauma. The pivotal question is whether his hearing acuity *worsened* during service, *see* 38 U.S.C. § 1153 (disability noted upon entry to service is presumed to be aggravated in service if there is an increase in disability during service), and Mr. Monzingo fails to demonstrate that the Board clearly erred in relying on the service medical records and 2008

VA medical report, which reflect no worsening in service, rather than Mr. Monzingo's recent statements, which contend a worsening in service. *See Hilkert* and *Gilbert*, both *supra*.

## IV. CONCLUSION

Upon consideration of the foregoing, the February 25, 2010, Board decision is AFFIRMED.

KASOLD, *Chief Judge*, concurring: I concur with the Court's decision, but write separately to further address Mr. Monzingo's argument that the February 2008 VA examination report is inadequate as a matter of law solely because it lacks a stated rationale for the examiner's opinion. Mr. Monzingo's argument is based on an inaccurate interpretation of our caselaw: namely, plucking out of context the statements in *Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 304 (2008), that a medical report is not "entitled to *any weight* . . . if it contains only data and conclusions"(emphasis added), and in *Stefl v. Nicholson*, 21 Vet.App. 120, 124 (2007), that a medical report "*must* support its conclusion with an analysis" (emphasis added). Standing alone and taken out of context, one might conclude that a medical opinion cannot be afforded any weight by the Board if it lacks a specific explanation.

However, *Nieves-Rodriguez* and *Stefl* must be read in context. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979) ("[T]he language of an opinion is not always to be parsed as though we were dealing with language of a statute."); *U.S. v. Bird*, 124 F.3d 667, 677 n.3 (5th Cir. 1997) ("While certain language in [a precedent], read in isolation, might be understood to embrace a somewhat far-reaching . . . analysis, the opinion must be read in the context of what was before the panel there . . . ."). Significantly, both of those cases dealt with the *weighing* of *multiple* medical opinions and the Board's evaluation of the probative weight of multiple opinions. *See Nieves-Rodriguez*, 22 Vet.App. at 302 (stating that "this Court's review of the Board's evaluation of *competing* medical opinions will be enhanced by" the enumerated guidelines in that case, and that the Court would review those guidelines "where the Board favors *one medical opinion over another*" (emphasis added)); *Stefl*, 21 Vet.App. at 124 ("[A medical opinion] must support its conclusion with an analysis *that the Board can consider and weigh against contrary opinions*." (emphasis added)).

14

Thus, in context, *Nieves-Rodriguez* and *Stefl* hold that, when the conclusions of two or more medical professionals differ, rationale is an essential ingredient to the Board's weighing of those opinions.

Moreover, our caselaw is quite clear that an expert opinion is adequate if it (1) is based on a correct factual premise, *Reonal v. Brown*, 5 Vet.App. 458, 461 (1993), (2) is based on the pertinent medical history and examinations, *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008); *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991) (same), (3) is not plagued by ambiguity or inconsistency, *Daves v. Nicholson*, 21 Vet. App. 46, 51 (2007), and (4) provides sufficient detail to fully inform the Board on its medical question, *D'Aries* and *Green*, both *supra*. Indeed, there is no reasons-or-bases requirement for medical examiners, and medical reports are to be read as whole, taking into consideration the history, tests, and examinations upon which the report is based. *See Acevedo v. Shinseki*, 25 Vet.App. 286, 294 (2012).

Accordingly, even though the sole medical opinion of record in this case lacked an explicit rationale, it was fully understandable when read as a whole, uncontroverted, based on a review of pertinent medical history and an examination, and it fully informed the Board on its medical question. Our caselaw states, and the Court reiterates in its decision today, that such an opinion is adequate and may be assigned probative value. *See D'Aries*, 22 Vet.App. at 104; *see also Acevedo, supra*.[4]

---

[4] Although not cited by Mr. Monzingo, I note that *Horn v. Shinseki*, 25 Vet.App. 231, 240-42 (2012), favorably cites *Nieves-Rodriguez* for the proposition that "an unexplained conclusory opinion is entitled to no weight." However, the Court's conclusion that the medical evaluation board report at issue in *Horn* did not constitute clear and unmistakable evidence rested on the fact that the report summarily had found no in-service aggravation without record evidence indicating the full scope of the medical records that had been reviewed or whether the summary opinion was predicated on any examination and testing, such that it was wholly unclear why the report found no in-service aggravation.