Citation Nr: 21049970
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 17-39 934
DATE: August 13, 2021

ORDER

Entitlement to service connection for a bilateral ocular disorder is denied. 

Entitlement to service connection for left foot disability is denied. 

Entitlement to service connection for right foot disability is denied. 

FINDINGS OF FACT

1. The preponderance of the evidence is against a finding that any of the Veteran's ocular disorders began during active service or are otherwise related to an in-service injury or disease, including reported inability to blink left eye.

2. The preponderance of the evidence is against a finding that the Veteran's currently diagnosed right and left foot disabilities began during active service or are otherwise related to an in-service injury or disease. 

CONCLUSIONS OF LAW

1. The criteria for service connection for a bilateral ocular disorder have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria for service connection for right foot disability have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

3. The criteria for service connection for left foot disability have not been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, .303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Army from July 1963 to July 1966. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a June 2016 rating decision, which denied service connection for bilateral foot pain, involuntary eye lid tremors, and vision impairment. 

The Board remanded the above claims multiple times, most recently in October 2020. The remand development has been completed to the extent possible, and these claims have returned to the Board. Of note, a May 2021 rating decision resulted in a grant of service connection for right and left knee disabilities, and these issues are no longer on appeal. 

In January 2021, the Veteran appointed the above individual as his representative under 38 C.F.R. § 14.630. See January 2021 VA Form 21-22a. The Board recognizes this change in representation. 

Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 as amended (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C. §§ 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The claims are also subject to the February 2019 and October 2020 Board remands. Stegall v. West, 11 Vet. App. 268 (1998); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008). 

For remand development, the agency of original jurisdiction (AOJ) sent September 2019 and October 2020 development letters to the Veteran requesting that he identify all healthcare providers and submit private medical record release authorizations. He was also informed that he could directly submit these medical records to VA. Based upon his responses, the identified private medical records were obtained. 

The Veteran was also afforded March 2021 VA-contract eye and foot condition examinations and medical opinions addressing whether his claimed eye and foot disabilities are related to service were obtained. The March 2021 VA medical opinion concerning the claimed eye conditions addressed the Veteran's lay reports about the inability to blink his left eye and November 1965 service treatment records (STRs). The optometrist was unable to locate the November 1965 STRs, but indicated that the general findings from the subsequent separation evaluation would render this report less significant. The March 2021 VA medical opinion concerning the claimed right and left foot disabilities is broadly inclusive of the Veteran's statements about military foot injuries sustained during a wrestling match and upon striking a wooden log. The physician noted the July 2017 Veteran report and injury description and referenced the previously stated rationale as his response to these questions. The March 2021 VA-contract medical opinions are substantially compliant with the prior remand instructions. 

There is no specific contention of an error pertaining to VA's duties to notify and assist or remand compliance. With these considerations, the Board finds that appellate adjudication for these claims may proceed without prejudice to the Veteran. See Shinseki v. Sanders, 556 U.S. 396, 409-10 (2009).

Service Connection

Service connection will be granted if the evidence demonstrates that current disability resulted from an injury suffered or disease contracted in active military, naval, or air service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) current disability; (2) in-service injury or disease; and (3) a relationship between the two. Saunders v. Wilkie, 886 F.3d 1356, 1361 (Fed. Cir. 2018). Consistent with this framework, service connection is warranted for a disease first diagnosed after service when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Under 38 C.F.R. § 3.303(b), where a chronic disease is shown as such in service, subsequent manifestations of the same chronic disease are generally service connected; if a chronic disease is noted in service but chronicity in service is not adequately supported, a showing of continuity of symptomatology after separation is required. Entitlement to service connection based on chronicity or continuity of symptomatology pursuant to 38 C.F.R. § 3.303(b) applies only when the disability for which the Veteran is claiming compensation is due to a disease enumerated on the list of chronic diseases in 38 U.S.C. § 1101(3) or 38 C.F.R. § 3.309(a), which include blepharospasm, as organic disease of the nervous system, and arthritis. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). In addition, such chronic diseases are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C. §§ 1101(3), 1112(a)(1), 1113; 38 C.F.R. §§ 3.307(a), 3.309(a).

Although entitlement to service connection on any of the presumptive bases noted above may not be established, a veteran is not precluded from establishing service connection on a direct basis. See 38 U.S.C. § 1113 (b); 38 C.F.R. § 3.303 (d) (the availability of service connection on a presumptive basis does not preclude consideration of service connection on a direct basis).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107(b).

Bilateral Ocular Disorder

Additional regulations pertain to this claim as noted below. For purposes of entitlement to benefits, the law provides that refractive errors of the eyes are congenital or developmental defects and are not a disease or injury within the meaning of applicable legislation. In the absence of superimposed disease or injury, service connection may not be allowed for refractive error of the eyes, including myopia, presbyopia, and astigmatism, even if visual acuity decreased in service, as this is not a disease or injury within the meaning of applicable legislation relating to service connection. 38 C.F.R. §§ 3.303(c), 4.9. Thus, VA regulations specifically prohibit service connection for refractive errors of the eyes unless such defect was subjected to a superimposed disease or injury which created additional disability. See VAOPGCPREC 82-90 (July 18, 1990); 55 Fed. Reg. 45711 (1990).

Service treatment records (STRs) include a July 1963 enlistment examination report. Clinical findings for eyes general, ophthalmoscopic, pupils and ocular motility were deemed normal. Vision testing showed that the Veteran had distant vision of 20/400 in the right eye and 20/200 in the left eye, each of which was corrected to 20/20. The clinician assessed defective vision based upon refractive error. On the accompanying medical history report, the Veteran reported a history of, or current, eye trouble and stated that he wore glasses.

The Veteran was then issued glasses based upon his July 1963 entrance examination with a prescription strength of -2.00 in his right eye and -1.75 in his left eye. 

November 1965 STRs noted the Veteran's reports about blurry distance vision and that he had the same prescription for 2.5 years. External examination noted "[illegible] O.S. all else WNL O.U." Following examination, the clinician issued a prescription strength of -2.50 for both eyes. See also February 1966 spectacle order form. 

A June 1966 separation examination report showed distant vision of 20/100 in both eyes with each corrected to 20/20. Clinical findings for eyes general, ophthalmoscopic, pupils and ocular motility were deemed normal. The Veteran again reported a history of, or current, eye trouble on his June 1966 separation medical history report and that he wore glasses. 

In July 1966, the Veteran reported no change in his medical condition since his June 1966 examination.

June 2001 private medical records stated that the Veteran was being "seen for evaluation of involuntary blinking of both eyes." He had frequent eye blinking for as long as he can remember. He indicated that it had worsened over the past several years accompanied by increased eye sensitivity. He complained about light sensitivity and preferred to wear darkening shades. He denied any obscuring vision symptoms. He had annual ophthalmologic eye examinations based on his history of diabetes. In her neurological examination, the physician reported that she noticed some frequency of eye blinking, though it was not compatible with blepharospasm or muscular twitching, nor was there frequent twitch of the eyelid. The physician's impression was that the blinking symptoms were probably a form of a nervous tic that had been present and 'programmed' for the patient since the early years of development. It seemed to have been worsened by eye sensitivity to light and other stimuli.

March 2008 private medical records included complaints about left eye irritation. It started about two weeks ago. The Veteran reportedly received Botox injections when his eyelid bothered him.

February 2013 private medical records showed assessments of presbyopia, astigmatism, and myopia.

December 2014 private medical records stated that the Veteran was seeking treatment for benign blepharospasm, bilateral with Botox injection. He last received a Botox injection in June 2014. It was effective, but wore off eight to ten weeks earlier. The Veteran now complained about a lot of tearing and involuntary lid squeezing. He had a past ocular history of diabetes mellitus, type II, with background retinopathy. The clinician prescribed artificial tears and ordered another Botox injection.

In October 2015, the Veteran filed a VA compensation claim for vision impairment and involuntary eyelid movement. 

An October 2015 private medical record included an assessment of blepharitis and bilateral incipient cataracts.

January 2016 private medical records noted that the Veteran presented with eyelid spasm. It was again reported that the Veteran had benign essential blepharospasm for which he received Botox treatments.

In his July 2017 substantive appeal (VA Form 9), the Veteran reported that he received glasses with an incorrect prescription and had to change his prescription eyewear two or three times. He was unable to blink his left eye. His inability to blink his left eye prevented him from achieving an M-1 Rifle qualification. Another soldier was substituted in his place so the company could comply with the requirement that all members earned this marksmanship qualification. 

A September 2019 private medical record included assessments of presbyopia; bilateral myopia; bilateral astigmatism; bilateral cataracts; and left herpes simplex keratitis.

In January 2020, the Veteran underwent a VA-contract examination with an optometrist. The optometrist diagnosed nuclear sclerosis, cortial cataract and benign essential blepharospasm and confirmed that each disorder affects both eyes. The optometrist noted that the Veteran asserted that his vision impairment was due to being issued an improper prescription during basic training and that military medical professionals changed his prescription two or three times during service. The Veteran also reported that he was unable to blink his left eye as a result. Clinical findings were detailed. 

In a February 2020 medical opinion, the optometrist, in pertinent part, furnished a negative medical opinion for bilateral cataracts being related to service. She stated that cataracts were an age-related change and would progress regardless of eyewear prescription. For blepharospasm, the accompanying medical opinion is inadequate for adjudication purposes since it did not consider whether blepharospasm manifested during service as explained in the October 2020 Board remand. This portion of the medical opinion will not be considered. 

In March 2021, the Veteran had another VA-contract examination with an optometrist. The optometrist diagnosed blepharospasm and cataracts for both eyes and corneal opacity left eye, now quiescent. Blepharospasm reportedly began in the 1980s. Cataracts dated to 2017 and corneal opacity to 2019. The onset of blepharospasm was reported after service and occurred spontaneously. Cataracts were found during a routine eye examination. Corneal opacity spontaneously appeared with left eye irritation. Ocular findings were detailed. In an accompanying medical opinion, the optometrist furnished a negative determination. He stated that the evidence indicated the current ocular disorders had their onset after service. He cited the absence of findings for any other eye disorder, other than refractive error, on the separation physical examination report. It was not until 2009 and 2012 that blepharospasm and cataracts were noted in medical records and 2019 for left corneal opacity. Then, the Veteran reported that blepharospasm started after separation from service. 

The optometrist also addressed the Veteran's reports about his inability to blink his left eye during service and the November 1965 STRs. As to the reported inability to blink the left eye, the optometrist stated that it had an unknown cause. He noted that the Veteran related it to his eyewear prescription changes in service. He further commented that the current blepharospasm symptoms were inconsistent with the Veteran's in-service symptoms of being unable to blink his left eye. As to the illegible November 1965 STRs, the optometrist stated he was unable to locate this specific STR and this finding could not be discussed. He stated that the report of within normal limits from physical examinations indicated that overall ocular health was normal. 

For the following reasons, the Board finds that while the Veteran has ocular disorders, these disorders have not been shown to have a relationship to service, including the reported inability to blink the left eye and vision difficulties associated with incorrectly prescribed eyewear. 

The Veteran is competent to report about readily observable ocular symptoms and history of such symptoms. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). He reported that in service he was unable to blink his left eye and was given incorrect eyewear prescriptions. He is competent to report about these problems in service. However, he does not detail how long the history of inability to blink the left eye lasted and has not asserted that it continuously existed from service to the present. He does not provide any specific report about any lasting non-refractive error ocular symptom associated with the incorrect eyewear to merit further inquiry. Accordingly, the issue of a relationship to service from continuous symptoms since service based upon the Veteran's reports is not for further consideration. 

The issue of whether the current post service ocular disorders are related to service is a complex medical question. Id. Medical expertise is required to provide an assessment of whether any current ocular disorder is related to in-service ocular problems many years ago. This is because of the non-observable ophthalmologic processes involved and the time lapse from service. Rather, competent evidence is required to establish a relationship to service for current ocular disorders and service. 38 C.F.R. § 3.159(a)(1). For these reasons, the Veteran's reports, standing alone, that any current ocular disorder is related to these in-service ocular problems are not competent. Colantonio v. Shinseki, 606 F.3d 1378, 1382 (Fed. Cir. 2010) (recognizing that in some cases lay testimony "falls short" in proving an issue that requires expert medical knowledge). 

The competent evidence concerning a relationship to service includes the March 2021 VA-contract medical opinion. It weighs against a relationship to service. It was authored by an optometrist based upon a contemporaneous ocular examination of the Veteran, a review of his treatment records, and consideration of his reported history, specifically including his reports of an inability to blink the left eye during service. Reading the opinion as a whole and in the context of the evidence of record, the optometrist determined that the current ocular disorders had their onset after service. He specifically addressed the Veteran's reported symptom of an inability to blink the left eye and the November 1965 STRs, as requested in the Board's October 2020 remand. His opinion is consistent with the additional evidence. The March 2021 VA-contract medical opinion is therefore entitled to some probative weight. Monzingo v. Shinseki, 26 Vet. App. 97, 106 (2012) (the fact that the rationale provided by an examiner "did not explicitly lay out the examiner's journey from the facts to a conclusion," did not render the examination inadequate). There is no conflicting medical opinion. 

The Board notes that there are additionally diagnosed refractive error and nuclear sclerosis, among similar ocular disorders, noted in prior medical records, but that these were not listed as a diagnosis on the March 2021 VA-contract eye conditions examination report. For refractive error, the above noted regulations do not recognize this disorder as a disability for VA compensation purposes. 38 C.F.R. §§ 3.303(c), 4.9. For the other ocular disorders, there is no evidence that these disorders had their onset in service or are otherwise related to service. The Veteran does not make any assertion as such, and the medical evidence does not in any way suggest a relationship. Further consideration of these ocular disorders is not warranted. Robinson v. Shinseki, 557 F.3d 1355, 1361 (Fed. Cir. 2009) ("Where a fully developed record is presented to the Board with no evidentiary support for a particular theory of recovery, there is no reason for the Board to address or consider such a theory").

For the above stated reasons, the preponderance of the evidence is against the claim of service connection for a bilateral ocular disorder. The benefit-of-the-doubt doctrine is therefore not for application, and service connection for a bilateral ocular disorder is not warranted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

Right and left foot disabilities 

STRs do not show complaints of or treatment for a foot disorder in service. The June 1966 separation examination report showed that the Veteran's feet were clinically examined and deemed normal. The accompanying medical history report reflected that the Veteran denied having or ever having foot trouble. A July 1966 statement from the Veteran confirmed that there had been no changes in his medical condition since this physical examination. 

August 2008 private medical records noted complaints about left foot pain without known trauma. Clinical evaluation showed pain with palpation to 1st and 2nd metatarsals. No mass or edema was found. The clinician assessed metatarsalgia and placed a podiatry referral. 

September 2008 podiatry clinic records showed that the Veteran reported a history of right foot pain for the past three months. He denied any injury. The podiatrist also noted a history of painful 1st metatarsal phalangeal joint with history of gout. Clinical findings were detailed. The podiatrist assessed keratoderma 5th metatarsal head right foot, bunion, hammertoes, flatfoot, osteoarthritis and foot pain. 

A November 2008 bilateral foot X-ray report showed the following: moderate whiskering along the medial aspect of the tarsal's and base of the 5th metatarsal, involving the lateral aspect of the fibular sesamoid, bilaterally. There was narrowing of the joint space of the 1st metatarsophalangeal joint. Minor marginal erosive change was present along the 1st metatarsophalangeal and interphalangeal joints. No evidence of acute fracture. There was bilateral pes planus deformity. Moderate bilateral posterior calcaneal spurring.

January 2010 private medical records included complaints about left hallux pain due to cutting the nail too short. The Veteran was concerned because of his diabetic status. Clinical evaluation showed normal neurovascular and monofilament findings. No lesion was found from the left side nail cut. 

May 2014 private medical records showed that the Veteran sustained a left toe sprain. It occurred five days ago, but the Veteran was concerned about continued swelling. Clinical evaluation showed left big toe positive for diffuse swelling and mild pain with motion. Diabetes foot check was normal. The clinician assessed left great toe sprain and ordered an X-ray. The left toe X-rays were negative for left big toe fracture or malalignment. Scattered degenerative changes were visualized. A 3 millimeter (mm) bony fragment medial to first metatarsal head was noted that may represent a bony spur related to degenerative change. It was also noted that a subtle non-displaced fracture can have a similar appearance. Clinical correlation was recommended. 

August 2014 private medical records showed that the Veteran complained about left foot pain in second toe, first metatarsal phalangeal. It had been present for a few months. He had a history of injury when he fell out of bed. Clinical evaluation showed flexible deformity to left 2nd toe, 1st metatarsal phalangeal joint with decreased motion, but no pain. Inflammation or masses for the left foot were not observed. The clinician assessed acquired left hallux valgus, left bunion, acquired left hammertoe, and left foot pain. 

January 2015 private medical records reported that the Veteran had an annual diabetic foot examination. No known injury, drainage, or bleeding was indicated. No ulceration history was reported. Paresthesias was present bilaterally. Clinical findings were detailed. The clinician assessed foot callus, diabetic related loss of protective sensation, bilateral hammertoes, bilateral bunion, acquired flat foot and diabetic peripheral neuropathy. Appropriate diabetic footwear was ordered. 

In his July 2017 substantive appeal (VA Form 9), the Veteran reported that during advanced military police (MP) training after basic training he engaged in many physical activities, including wrestling in a sawdust covered pit. One day during such training he was thrown. His foot and leg landed on a large wood log surrounding the wrestling pit. He injured his knee, ankle, back and leg. The subsequent physical training, including running and push-ups, aggravated these injuries. He was also discouraged from visiting sick call for treatment. 

In December 2019, the Veteran had a VA-contract examination with a physician. The physician diagnosed hammertoes, left and hallux valgus bilateral feet. In pertinent part, the Veteran stated that his foot problems started during 1963 basic training from minor accidents. The medical opinion accompanying this examination report has been deemed inadequate for adjudication purposes. However, the above historical information may properly be considered for background purposes. Monzingo, 26 Vet. App. at 107.

In March 2021, the Veteran had a VA-contract Foot Conditions examination with a physician. The physician diagnosed hammertoes, right foot and tendinosis, bilateral feet. The Veteran reported an insidious onset of bilateral foot pain many years ago. It worsened with ambulation and was located at the forefoot. He also noted weight-bearing activities, walking, and climbing stairs as aggravating factors. Clinical findings were detailed with swelling, disturbance of locomotion, interference with standing, pain, and fatigue as the contributing factors of functional loss. 

In the accompanying medical opinion, the physician reported that he considered the Veteran's personal statements, STRs, service history and physical examination in determining that a bilateral foot disability was not at least as likely as not related to service. He stated that although the record had gaps, it did not prevent an accurate medical opinion based upon the available evidence, including the Veteran's personal statements, service history and contemporaneous physical examination. He stated that the physical examination in the context of personal history was unsupportive of a direct relationship to service. He further stated that pathophysiological association of the claimed condition to service was tenuous and etiologically vague from a medical view. He noted the positive findings for bilateral tendinosis, but explained that it was impossible to differentiate the natural course and organic phenomenology from the element that may be service-related. He also commented that any current bilateral foot problems did not have a clear link to the Veteran's period of service. 

For the following reasons, the Board finds that while the Veteran has bilateral foot disabilities, these disabilities have not been shown to have a relationship to service, including the military injuries described by the Veteran. 

The Veteran is competent to report about readily observable foot symptoms and history of such symptoms. Jandreau, 492 F.3d at 1377, n. 4. The evidence includes conflicting reports about the Veteran's foot symptom history. The December 2019 VA-contract examination report noted that the Veteran reported his foot problems started with basic training. However, the July 1966 medical history report showed that the Veteran denied foot problems. August 2008 and September 2008 private medical records reflected a recent onset for foot pain. In his July 2017 substantive appeal, the Veteran referenced an ankle injury rather than a foot injury during service. Then, the Veteran's report from the March 2021 VA-contract examination is vague as to onset of bilateral foot symptoms. Overall, the Veteran's reports about foot symptoms are unclear as to any in-service onset and are more suggestive of a post service onset. The August 2008 and September 2008 private medical records about relatively contemporaneous onset for foot problems are particularly probative since they were given to treating clinicians in the course of medical treatment. The Board finds that the weight of the evidence is against continuous symptoms starting in service for either foot. 

The issue of a relationship to service for post service foot disorders is a complex medical question. Jandreau, 492 F.3d at 1377, n. 4. This is because of the time lapse from service and internal medical processes evolving over a period time. Thus, the relationship question extends beyond an immediately observable cause-and-effect relationship that is of the type that the courts have found to be beyond the competence of lay witnesses. Id. Competent evidence is required to establish a relationship to service for current foot disorders. 38 C.F.R. § 3.159(a)(1). Because the Veteran is not competent to report as a medical expert, his statements as to a relationship between the current foot disorders and service are not competent. Colantonio, 606 F.3d at 1382 (recognizing that in some cases lay testimony "falls short" in proving an issue that requires expert medical knowledge).

The competent evidence concerning a relationship to service is limited to the March 2021 VA-contract medical opinion, and it weighs against a relationship to service, including the July 2017 injury description by the Veteran. It was based upon a contemporaneous podiatry examination of the Veteran, a review of his treatment records, and consideration of his reported history. Reading the opinion as a whole and in the context of the evidence of record, the physician determined that it was impossible to identify a military injury as a cause of the Veteran's current foot problems and that there was no evidence of a clear link to service. His opinion is therefore entitled to some probative weight. See Monzingo, 26 Vet. App. 97, 106 (2012) (the fact that the rationale provided by an examiner "did not explicitly lay out the examiner's journey from the facts to a conclusion," did not render the examination inadequate). There is no conflicting medical opinion. 

For the above stated reasons, the preponderance of the evidence is against the claims of service connection for right and left foot disability. The benefit-of-the-doubt doctrine is therefore not for application, and service connection for right and left foot disability is not warranted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

 

 

Brian J. Elwood

Acting Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board C. D. Simpson, Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.