Citation Nr: 1513785 
Decision Date: 03/31/15 Archive Date: 04/03/15

DOCKET NO. 09-13 085 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to service connection for an acquired psychiatric disability, to include generalized anxiety disorder.


REPRESENTATION

Veteran represented by: Oregon Department of Veterans' Affairs


WITNESSES AT HEARING ON APPEAL

Veteran and his case manager


ATTORNEY FOR THE BOARD

Jack S. Komperda, Associate Counsel

INTRODUCTION

The Veteran served on active duty from June 1977 to October 1977 and from January 1980 to September 1982.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a June 2008 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Augusta, Maine. During the course of the appeal, the Veteran moved and jurisdiction of his claim was transferred to the RO in Portland, Oregon.

In March 2011, the Veteran and his case manager testified at a Travel Board hearing before a Veterans Law Judge who has since left the Board. A transcript of the proceeding is in the record. In December 2014, the Veteran declined the opportunity to testify at another hearing.

In April 2012, the Board reopened and remanded the Veteran's claim for further development. The Board finds that there has been substantial compliance with its remand directives, and that the Board's duty to assist has been satisfied. See Stegall v. West, 11 Vet. App. 268 (1998).


FINDING OF FACT

There has been no demonstration by competent medical, nor competent and credible lay, evidence of record that the Veteran has a currently diagnosed psychiatric disability subject to compensation.


CONCLUSION OF LAW

The criteria for entitlement to service connection for an acquired psychiatric disability have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.307, 3.309 (2014).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. 
§§ 3.102, 3.156(a), 3.159 and 3.326(a) (2013); see also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). The duty to notify was satisfied in an April 2008 letter to the Veteran.

VA also has a duty to assist the Veteran in the development of the claim. The claim file includes his service treatment records, post-service medical records and lay statements from the Veteran in support of his claims. The Veteran has not identified any additional outstanding evidence in these matters that could be used to substantiate his claims. The Board is also unaware of any such outstanding evidence or information and has found nothing in a review of the claims file to suggest that there is any outstanding evidence which VA has a duty to obtain. 

The Veteran was afforded a VA examination in June 2012 to assess the nature and etiology of any diagnosed psychiatric condition. The VA examination was adequate, as the examiner conducted a complete examination, fully reviewed the Veteran's medical history, and recorded all findings considered relevant under the applicable law and regulations. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that VA's duty to assist the Veteran with respect to obtaining a VA examination has been met. 38 C.F.R. § 3.159(c)(4).

The Board finds that all relevant facts have been properly and sufficiently developed in this appeal and no further development is required to comply with the duty to assist the Veteran in developing the facts pertinent to his claims.

II. Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred or aggravated during active military service. 38 U.S.C.A. §§ 1110, 1131. Generally, service connection requires (1) the existence of a present disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Notwithstanding the lack of evidence of disease or injury during service, service connection may still be granted if all of the evidence, including that pertinent to service, establishes that the disability was incurred in service. See 38 U.S.C.A. § 1113(b); 38 C.F.R. § 3.303(d); Cosman v. Principi, 3 Vet. App. 503 (1992). 

A review of the Veteran's service treatment records show no records of complaints, treatment or diagnoses related to any psychiatric condition. A January 1980 enlistment examination report states that the Veteran had a normal psychiatric clinical evaluation. In his January 1980 Report of Medical History, the Veteran denied having a history of nervous trouble of any sort, frequent trouble sleeping, depression or excessive worry. His August 1982 separation examination report shows normal psychiatric findings. An August 1982 Report of Mental Status Evaluation noted the Veteran's behavior was normal. He was found to be fully alert, fully oriented, his mood was unremarkable, his thinking process was clear, his thought content was normal and memory was good. 

The Veteran's post-service VA medical records include treatment records that show a variety of mental health diagnoses. A January 1983 record notes that the Veteran was diagnosed with "schizophrenia, schizoaffective or paranoid type," as well as borderline personality disorder. In February 1983, the Veteran reported to the mental health clinic, where he described feelings of restlessness and feeling "wound up." The examiner noted an impression of bipolar disorder.

In July 1983, the Veteran was offered a VA examination where he claimed he started having trouble controlling his temper when he was in the service. He stated not being able to get along well with other people because of his outbursts of temper. Upon examination, the Veteran was found to appear neat and clean, in general good demeanor, and he gave spontaneous information in a friendly and cooperative manner. His stream of thought and talk were adequate, he was in very good contact with reality, and the examiner noted it was not possible to disclose any disturbance of the thinking process in his content of thought. His mood and affect, sensorium and grasping capacities, and intellectual level were all noted to be within normal limits. The examiner stated that the Veteran's insight and judgment were well preserved. The VA examiner stated that the Veteran did not have a mental disorder. Atypical impulse control disorder was also noted under psychiatric diagnosis. 

In June 1986, the Veteran underwent a mental status exam provided by the Disability Determination Division of the Indiana Rehabilitation Services Board. The doctor noted that the Veteran's affect was normal except for grinning inappropriately or laughing in a nervous fashion. At times, the Veteran reported experiencing pressured and racing thoughts. However, the doctor noted that the Veteran did not display this at the exam. He claimed that his thought content centered on hatred for his brother. The Veteran denied trouble sleeping, he stated his energy was "too good" and described having a diminished appetite. He also denied crying spells, stated he never thought about or attempted suicide, and there was no evidence of hallucinations, delusions or paranoia. His thought processes were logical, sequential, coherent and pertinent. The doctor stated that the Veteran had bipolar disorder that is currently in the manic stage. 

A September 1987 private treatment record notes that the Veteran appeared somewhat tense during his mental status exam and very often had a grin on his face. His thought processes were logical and sequential. There was no pressure of speech or flight of ideas noted. He denied having any suicidal ideation or hallucinations. His past and recent memory was intact. His insight was found to be poor and judgment seemed to be very impulsive. The Veteran was diagnosed with attention deficit disorder, residual type, and the examiner stated that the Veteran needed further psychiatric evaluation.

A May 1991 VA treatment record noted an impression of generalized anxiety disorder. In December 1991, the Veteran underwent a psychological examination for the purposes of a disability determination through Indiana's Disability Determination Division. At his exam, the Veteran's mood was appropriate to the situation with no signs of significant anxiety or depression. The examiner diagnosed him with antisocial personality disorder.

In May 1995, the Veteran underwent another mental status examination ordered by the Disability Determination Bureau. The Veteran reported having "bad nerves." He was appropriately dressed and groomed with no evidence of personal hygiene neglect. His affect was fairly normal and remained stable, although the examiner noted he became slightly agitated at times. The Veteran denied suicidal ideation, his affect was appropriate, and his thought pattern was without major delusions or flight. He denied auditory, visual, tactile, olfactory, and gustatory hallucinations. No clear signs of anxiety were noted. Attention span and concentration were well within normal limits. The Veteran's ability to sustain attention and concentration was also determined by the examiner to be normal. The examiner stated that the Veteran was not depressed or anxious but was perhaps slightly agitated. He denied was noted to have some difficulty with temper control. The examiner noted that the Veteran continued to have the ability to do simple, repetitive, detailed and even complex types of tasks. The examiner noted that the Veteran did not have an Axis I mental health diagnosis. He was given an Axis II diagnosis of antisocial personality disorder.

A review of the Veteran's Social Security Administration (SSA) records notes that he was disabled as of December 1984 for a primary diagnosis of personality disorders. However, SSA determined that the Veteran's disability ceased in July 1995. 

A February 2008 VA treatment record notes that the Veteran underwent a mental status exam where he was casually but cleanly dressed. His mood was described as angry, his affect was consistent with his stated mood, and his speech was unremarkable. The Veteran was fully alert and oriented. His memory for remote, recent and immediate information was intact. The Veteran denied current suicidal or homicidal ideation. There was no overt psychosis apparent during the interview. The Veteran's insight appeared to be fair to good, and his judgment was adequate. He was given an Axis I diagnosis of anxiety.

A January 2010 VA mental health progress note reflects the Veteran's continued complaints of trouble sleeping, as well his statements that his medication has been "helpful." A mental status exam showed the Veteran to have a pleasant manner, and he was joking about some issues. He had less pressured speech and no irritability. The examiner noted that there was new evidence of depression, suicidal or homicidal feelings. Under Axis I diagnosis, the VA examiner wrote "I suspected attention deficit disorder but would consider bipolar disorder."

A February 2010 VA mental health progress note reflects that the examiner found the Veteran to be "gloomy and pessimistic." The examiner also noted that the Veteran was staying with a friend because the electricity was cut off in his motor home. The Veteran denied having suicidal or homicidal thoughts. He was diagnosed with bipolar disorder. 

Pursuant to the Board remand, the Veteran was afforded a VA examination in June 2012. Initially, the examiner questioned whether the Veteran was a fully reliable historian and noted that at the time of the examination, the Veteran was unable to provide a general description for various circumstances, and was unable to provide a close timeframe for historical situations. He only acknowledged information that was already presented to him after it was known that it was already in the claims file. 

The VA examiner noted that prior to military service, the Veteran had a history of behavioral/conduct issues during his childhood. There were periods of truancy and it was not clear if the Veteran was always forthright about his circumstances. The examiner noted that information in the file shows that the Veteran may have had a period of outpatient juvenile rehabilitation through the legal system for approximately six months. He received counseling associated with antisocial behavior. The VA examiner noted that initially the Veteran denied any history of mental health treatment prior to military service until the examiner reminded him of the information in the claims file. 

The examiner noted that post-service, the Veteran received psychological testing and treatment through the VA. The VA examiner also noted several situational problems the Veteran was going through, including legal problems associated with stealing and arrests, as well as divorce and difficulties the Veteran was having in sustaining work activity. The examiner noted the Veteran's award of SSA disability benefits for a personality disorder. The Veteran was noted to have conduct/behavior problems since childhood. Between the 1980s and approximately 2008, the Veteran stated it was unclear whether the Veteran had regular mental health treatment, although he may have sought some intermittent counseling. The examiner noted a 2008 treatment record in which the Veteran was seen at the Heartland VA clinic with "no real agenda," he was noted to have legal and family problems, and he was diagnosed with anxiety disorder. The VA examiner also noted subsequent treatment at the Fort Collins, Colorado VA clinic for a variety of noted mental health conditions, including impulse control disorder, dysthymia and narcissistic/antisocial personality traits.

Upon examination, the Veteran reported being "very stressed." The Veteran also stated he can be irritable, argumentative and was depressed. He denied active suicidal ideation, plans or a history of attempts. He denied overt psychotic symptoms, auditory or visual hallucinations, or paranoia, but he stated being sensitive to noise. He also denied having panic attacks or obsessive-compulsive symptoms, persistent hyperarousal, manic symptoms grandiosity, impulsivity, or decreased need for sleep. The examiner noted that in 1987 the Veteran was given a diagnosis of attention deficit disorder, and at other times, his presumptive diagnosis of bipolar disorder was reported to be in remission. The Veteran reported working as a truck driver for 30 years, yet the VA examiner stated it was unclear if the Veteran was working regularly while receiving Social Security disability benefits. The examiner questioned the Veteran's effort at performing the tasks during his exam. The Veteran showed some difficulty with short-term memory, working memory, attention and focus. 

The examiner stated that the Veteran had an enduring pattern that can be traced back, at least to adolescence or early adulthood, of impairment in impulse control, ineffective coping/mood disturbance and impulsive/antisocial behaviors. More recently, the Veteran has been seen in mental health treatment since 2008-09 for difficulties with antisocial behavior, mood instability, and narcissistic and other traits. The Veteran described a longstanding history of unstable interpersonal relationships, irritability, anger and difficulty getting along with others.

The VA examiner stated that in his opinion, the Veteran was not currently describing symptoms consistent with an Axis I mental disorder. The examiner stated that the Veteran's anxiety and other symptoms are related to lifelong ongoing situational problems and interpersonal tensions. The examiner stated that while the Veteran did report and has shown at times some affective instability and anxiety, "these symptoms are subsumed under his characterological problems/personality disorder/lifelong issues. They do not warrant a separate Axis I diagnosis." Further, the examiner stated his belief that the Veteran was not a fully reliable historian and showed limited motivation and effort with regard to task performance on the St. Louis University Mental Status Exam. The examiner stated that the Veteran's cognitive functioning at the time of this exam was felt to be an underestimate of his actual abilities due to issues with regard to effort and motivation.

The VA examiner noted that the Veteran has carried a number of different mental health diagnoses that are documented in his claims file, including bipolar disorder, personality disorder, attention deficit disorder and schizoaffective disorder versus schizophrenia. However, the VA examiner stated that after a comprehensive review of information in the file and speaking with the Veteran, it was his opinion that that a pervasive pattern of instability in personal relationships, self-image, affect and impulsivity beginning at least in early adulthood has caused him to have a pattern of unstable interpersonal relationships. Further, information in the Veteran's file suggests that he has an unstable self-image with decreased self-esteem. The Veteran has also shown affective instability with irritability, inappropriate anger or difficulty controlling anger. Overall, the VA examiner stated that the Veteran's symptoms are most consistent with a diagnosis of personality disorder.

The Board finds that the most probative evidence of record weighs against the Veteran's claim. The existence of a current disability is the cornerstone of a claim for VA disability compensation claim. In the absence of a current disability, there can be no valid claim. See Brammer v. Derwinski, 3 Vet. App. 223 (1992).

In this case, the Veteran's claims file contains a number of mental health diagnoses. However, the Board finds the June 2012 VA examiner's examination report and opinion to be particularly persuasive and entitled to great probative weight because it is based on an exhaustive review and recitation of the Veteran's claims file history, as well as a personal interview and mental health examination of the Veteran. The examiner addressed the Veteran's assertions and provided a painstakingly detailed rationale for the conclusion that the Veteran does not have an Axis I mental health diagnosis based on the record and the examination findings. Monzingo v. Shinseki, 26 Vet. App. 97 (2012). 

The only other evidence in the record concerning a diagnosis and etiology is the Veteran's own statements. Lay persons are competent to provide opinions on some medical issues; however, the specific issue in this case (whether the Veteran has a psychiatric disability) falls outside the realm of common knowledge of a lay person. Kahana v. Shinseki, 24 Vet. App. 428(2011); Jandreau v. Nicholson, 429 F.3d 1372 (Fed. Cir. 2007). 

The Board acknowledges that the VA examiner diagnosed the Veteran with personality disorder. However, the Board notes that service connection cannot be granted for this disability because personality disorders are not considered to be diseases or injuries for compensation purposes. See 38 C.F.R. § 4.127. 

Based on a review of the foregoing evidence and the applicable laws and regulations, the Board finds that the preponderance of the evidence is against the Veteran's claim seeking service connection for an acquired psychiatric disability, to include generalized anxiety disorder, and the claim must be denied. See 38 U.S.C.A § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).


ORDER

Entitlement to service connection for an acquired psychiatric disability, to include generalized anxiety disorder, is denied.



____________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs