Citation Nr: 1808262 
Decision Date: 02/08/18 Archive Date: 02/20/18

DOCKET NO. 14-18 973 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUES

1. Entitlement to service connection for hypertension, to include due to exposure to an herbicide agent, and as secondary to service connected diabetes mellitus type II (DMII).
 
2. Entitlement to service connection for renal insufficiency to include as secondary to service connected DMII.


REPRESENTATION

Appellant represented by: Michael J. Woods, Attorney at Law


ATTORNEY FOR THE BOARD

R. Maddox, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1965 to October 1967 which included service in the Republic of Vietnam.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a February 2014 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in New Orleans, Louisiana which, among other things, denied reopening claims of entitlement to service connection for hypertension and renal insufficiency as secondary to DMII as the evidence submitted was not new and material.

In February 2014 the Veteran submitted his notice of disagreement as to these two issues, and in May 2014 was issued a statement of the case and perfected his appeal to the Board.

In September 2016, the Board reopened the Veteran's claims for hypertension and renal insufficiency finding that new and material evidence had been submitted, and remanded the claims for a new VA opinion.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


REMAND

The Veteran contends that he suffers from hypertension and renal insufficiency due to his service connected DMII. However, the issues on appeal are not limited to those relating to the specific contentions of the Veteran; rather, the Board must address all theories raised by the evidence of record. See Robinson v. Shinseki, 557 F.3d 1355, 1361 (Fed. Cir. 2009) (in direct appeals, all filings must be read in a liberal manner); EF v. Derwinski, 1 Vet. App. 324, 326 (1991) (Board must review all issues reasonably raised from a liberal reading of all documents in the record).

In addition, the Veteran claims that his renal insufficiency is due to his hypertension. Hence the renal insufficiency claim is inextricably intertwined with the hypertension issue being remanded.

Medical treatment records note that the Veteran has been receiving treatment for DMII since February 2006.

A May 2006 VA examination report noted that the Veteran's hypertension was not a complication of his DMII as they had been diagnosed at the same time. However, the examiner opined that the Veteran's hypertension was worsened or increased by his DMII, but did not provide a rationale to support his opinion.

An April 2008 DMII VA examination report noted that the Veteran was also being treated for hypertension which the examiner concluded was not a complication of DMII as it had preceded DMII by several years, nor had it been worsened or increased by the Veteran's DMII.

A February 2012 VA disabilities benefits questionnaire (DBQ) noted that while the Veteran was diagnosed with DMII in 2001, the examiner opined that his hypertension was not at least as likely as not (at least 50 percent probability) due to or aggravated by DMII.

A February 2014 DBQ noted a diagnosis of a kidney condition in 2006 with an abnormal, but steady creatinine level, and normal microalbumin readings. The examiner additionally noted that the Veteran's hypertension was not caused by any kidney condition. The examiner opined that the Veteran's renal insufficiency was less likely than not (less than 50 percent probability) proximately due to or the result of the Veteran's DMII. The examiner supported his opinion by stating that the Veteran has had stable stage III chronic kidney disease (CKD) since 2006; has long standing hypertension, DMII, and tobacco abuse; and has only 1 elevated microalbumin level in 2014 which occurred long after his CKD developed. The examiner explained to be considered significant microalbuminuria, the microalbumin level must be elevated on multiple occasions which is not the case here. The examiner continued to state that as microalbuminuria is the earliest sign of diabetic nephropathy, it should be present prior to or at least at the same time as this CKD was diagnosed. Thus, the examiner concluded that as there was no significant microalbuminuria at the time of his diagnosis of CKD, his CKD is secondary to hypertension and tobacco abuse, and not DMII.

Finally, an October 2016 examination report indicated that it is less likely than not that the Veteran's hypertension had its onset during active service, or is otherwise causally related to service as all of his blood pressure readings during service were normal. The report also noted that it is less likely than not that the Veteran's hypertension was caused or aggravated by DMII as they were diagnosed at the same time, and there was no evidence of diabetic nephropathy which needs to be present via DMII effects on the kidneys.

The examiner continued by reiterating the previous contention that there was no evidence of microalbuminuria at the time the Veteran initially developed CKD which is the earliest sign of diabetic involvement of the kidney which is a necessary factor for its diagnosis. Therefore, the examiner stated that the Veteran's kidney disease is not caused or aggravated by his diabetes as without microalbuminuria, it is impossible to diagnose diabetic kidney disease of any type. The examiner opined that as CKD developed long after discharge, it is not secondary to service and there is no evidence that Agent Orange or other exposure causes CKD.

The examiner also noted that the Veteran has no evidence of diabetic nephropathy, thus his hypertension is not caused or aggravated by his DMII as DMII only causes or aggravates hypertension if it causes or aggravates kidney disease which is not the case here. 

The examiner added that as hypertension developed long after discharge, it is not secondary to service and "there is no evidence whatsoever that Agent Orange or any other exposure causes hypertension." The opinion is inadequate because it is based on an inaccurate factual premise. Monzingo v. Shinseki, 26 Vet. App. 97, 107 (2012) ("If the opinion is based on an inaccurate factual premise, then it is correct to discount it entirely") (citing Reonal v. Brown, 5 Vet. App. 458, 461 (1993))). There is evidence of an association between Agent Orange exposure and hypertension. Although the evidence of an association between hypertension and Agent Orange has been found insufficient to warrant a presumption of service connection, VA has recognized that there is limited or suggestive evidence of an association between hypertension and Agent Orange exposure. See Determinations Concerning Illnesses Discussed in National Academy of Sciences (NAS) Report: Veterans and Agent Orange: Update 2012, 79 Fed. Reg. 20308, 20309-10 (Apr. 11, 2014). The Court has held in multiple memorandum decisions that VA's acknowledgment in the Federal Register that there is limited or suggestive evidence of an association between Agent Orange exposure and hypertension was relevant to the question of whether a VA examination was warranted in connection with a claim for service connection for this disability and the failure to discuss the Federal Register NAS findings rendered the Board's reasons or bases inadequate, warranting vacatur and remand. See Clark v. Shinseki, No. 12-2667, 2013 WL 6729512 (Vet. App. Dec. 20, 2013); Rodela v. Shinseki, No. 12-2894, 2013 WL 6184952 (Vet. App. Nov. 27, 2013); King v. Shinseki, No. 12-2893, 2013 WL 5428781 (Vet. App. Sept. 30, 2013); Allsopp v. Shinseki, No. 12-1847 (Vet. App. Aug. 27, 2013). As the October 2016 examiner's statement inaccurately indicated there was "no evidence whatsoever" of an association, the opinion is inadequate, and a new VA opinion should be obtained.

As the service connection claim for renal insufficiency is claimed as secondary to hypertension, the Board finds this claim is inextricably intertwined with the service connection claim for hypertension. As such, the Board will defer action on the issue of entitlement to service connection for renal insufficiency until after completion of the actions requested below, and the issue of entitlement to service for hypertension has been readjudicated. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (two issues are "inextricably intertwined" when they are so closely tied together that a final Board decision cannot be rendered unless both issues have been considered).

Accordingly, the case is REMANDED for the following action:

1. Request an opinion from an appropriate specialist physician. The physician must determine:

(a) Whether it is at least as likely as not (50 percent probability or greater) that the Veteran's current hypertension is etiologically related to his military service, to include exposure to Agent Orange.

For purposes of this opinion, the physician should presume that the Veteran was exposed to Agent Orange during service, and must consider that VA has recognized that there is limited or suggestive evidence of an association between hypertension and Agent Orange exposure. See Determinations Concerning Illnesses Discussed in National Academy of Sciences (NAS) Report: Veterans and Agent Orange: Update 2012, 79 Fed. Reg. 20308, 20309-10 (Apr. 11, 2014). The physician should note that the fact that hypertension is not on the list of diseases presumed service connected in veterans exposed to Agent Orange is not a valid basis for concluding that this Veteran's hypertension is not related to his Agent Orange exposure.

(b) Whether it is at least as likely as not (50 percent probability or greater) that the Veteran's current renal insufficiency was either (i) caused or (ii) aggravated by his hypertension.

The physician must address all pertinent evidence of record, as appropriate. All findings should be reported in detail and all opinions must be accompanied by a clear rationale.

2. After completing the above, and undertaking any additional evidentiary development deemed necessary, readjudicate the issues remaining on appeal. If any benefit sought is not granted, the Veteran and his representative should be provided with a supplemental statement of the case. An appropriate period of time should be allowed for response before the case is returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



_________________________________________________
Jonathan Hager 
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C. § 7252 (2012), only a decision of the Board is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).