Citation Nr: 1532781 
Decision Date: 07/31/15 Archive Date: 08/05/15

DOCKET NO. 11-25 953 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Sioux Falls, South Dakota


THE ISSUE

Entitlement to service connection for sinusitis, to include as secondary to a service-connected deviated nasal septum.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

T. Wishard, Counsel


INTRODUCTION

The Veteran had active military service from October 1980 to October 1983.

This matter comes before the Board of Veterans' Appeals (Board) from a February 2011 rating decision of the Department of Veterans Affairs (VA), Regional Office (RO) in Sioux Falls, South Dakota. 

In November 2011, the Veteran testified at a hearing before a Decision Review Officer. A transcript of that hearing is of record. 

In June 2013, the Veteran testified at a Travel Board hearing before the undersigned Veterans Law Judge. A transcript of that hearing is of record. 

This matter was previously before the Board in May 2014 when the Board denied the Veteran's claim. The Veteran appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In an Order dated in May 2015, the Court vacated the Board's decision and remanded the case to the Board for development consistent with a Joint Motion for Remand (JMR). The JMR noted that the Board must assess the competency and credibility of the lay testimony, which the Board does in the decision below.

The Board notes that the JMR indicated that the RO may not have considered the lay statement of T.D. because it was not specifically mentioned in the RO's discussion; nevertheless, the Board notes that it was listed on pages one and two of the May 2012 supplemental statement of the case (SSOC); thus, the RO did have the evidence. In June 2015, the Veteran submitted an Additional Evidence Response Form in which he requested that his claim be remanded to the AOJ for review of additional evidence; however, the Veteran did not actually submit additional evidence. Therefore, a remand to the AOJ is not warranted. 


FINDINGS OF FACT

1. The Veteran's STRs do not support a finding of chronic sinusitis in service. 

2. The lay evidence is not credible with respect to the claim that chronic sinusitis was present since separation from service.

3. The most probative evidence of record is against a finding that the Veteran has a sinusitis disability during the pendency of the claim causally related to, or aggravated by, active service, or a service-connected disability.


CONCLUSION OF LAW

The criteria for entitlement to service connection for sinusitis have not been met. 38 U.S.C.A. §§ 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.310 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). Notice was provided in December 2009. 

VA examinations/opinions with respect to the issue on appeal were obtained in January 2011 and March 2012, with an addendum in July 2012. 38 C.F.R. § 3.159(c) (4). The Board finds that the Veteran has been afforded an adequate examination with opinion. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The opinions are predicated on a full reading of the claims file, to include the medical records and the Veteran's reported statements, and provide an adequate rationale. The Board finds that the clinicians need not have considered that the Veteran had chronic sinusitis since service because the Board, as discussed in further detail below, finds that the lay evidence is less than credible as to such an allegation. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issue on appeal has been met. 38 C.F.R. § 3.159(c) (4). 

The claims file includes service treatment records (STRs), post service clinical records, and the statements of the Veteran and others in support of his claim. The Board has considered the statements and perused the medical records for references to additional treatment reports not of record, but has found nothing to suggest that there is any outstanding evidence with respect to the Veteran's claim for which VA has a duty to obtain. 

Legal Criteria

Establishing service connection generally requires medical evidence or, in certain circumstances, lay evidence of the following: (1) A current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) nexus between the claimed in-service disease and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir.2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed.Cir.2007); Hickson v. West, 12 Vet. App. 247 (1999); Caluza v. Brown, 7 Vet.App. 498 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table). 

In each case where service connection for any disability is being sought, due consideration shall be given to the places, types, and circumstances of such Veteran's service as shown by such Veteran's service record, the official history of each organization in which such Veteran served, such Veteran's medical records, and all pertinent medical and lay evidence. 38 U.S.C.A. § 1154(a). 

Analysis

The Board has reviewed all of the evidence in the Veteran's claims file, with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board will summarize the relevant evidence where appropriate, and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claim.

The Veteran contends that he suffered a broken nose in service and has suffered from sinus problems since that time. Service connection is in effect for a deviated nasal septum.

The Veteran's August 1980 report of medical history for entrance purposes reflects that he reported that he did not know if he had ever had sinusitis. He reported that he had had chronic or frequent colds, in that they occurred once a month and lasted three days. 

The Veteran's STRs are negative for chronic sinusitis, but note one sinus headache. An April 1983 STR reflects that the Veteran had complaints of a sinus headache, body aches, congestion, dizziness, and having been feverish. The assessment was a sinus headache. 

The Veteran's STRs reflect that he was seen for a variety of complains to include the following: pediculosis (December 1980), chest pain (rule out bronchitis) (June 1982), possible strep throat infection (July 1982), tonsillitis (March 1981), acne (March 1981, May 1981, February 1983, March 1983, April 1983), right lower leg bruised muscle (May 1983), left knee bruise (May 1983), feet calluses (March 1983), back pain (October 1981), mental health (June 1981), right foot complaints (March 1982), painful elbow (September 1981), and a body rash (September 1981). 

In sum, in a three year period, he sought treatment on at least 18 occasions, but only once was a sinus headache noted. The Board finds that if the Veteran had had chronic sinusitis in service, it would have been reasonable for him to have sought treatment for it as he sought treatment for a variety of complaints, and for it to have been noted when he sought treatment for his other ailments. 

The Board acknowledges the Veteran's testimony at the DRO hearing that his section chief counseled him for going to sick call too many times, and he therefore, did not seek treatment as often as he should have due to potential disciplinary actions. (See DRO hearing transcript, pages 5 and 6.) The Veteran testified that he had the "weight on [his] shoulders of do I go to sick call, or do I . . . you know . . . make [the section chief look good] by not going on sick call". 

The Board finds that the Veteran's alleged reason for not going to sick call if he had sinusitis is less than credible. As noted above, the Veteran sought treatment on numerous occasions for other disabilities. In addition, the record reflects that the Veteran was discharged from the military under Chapter 9, AR 635-200 for abuse of drugs, and that he did not want to remain in the military (See June 1981 STR). He had been counseled for failing to pay a debt and writing a bad check in March 1983. He was given nonjudicial punishment in November 1980 for disrespect to a superior noncommissioned officer, and again in March 1983 for disrespectful language to a superior commissioned officer. A 1983 counseling record, AE Form 113-4-R, reflects that the Veteran was counseled for the second time for being in the incorrect uniform. His section chief also noted that the Veteran liked to go on sick call "a lot, most of the time on [physical training] days." The Board acknowledges that the sergeant stated that "going on sick call to [sic] many times can [resort] in you being chapter[ed] out as unfit. You change your sick call slip from one illness to another to go to sick call." Based on the record as a whole, it seems unreasonable that the Veteran would forgo going to sick call if he were actually sick, and would instead try to make the section chief "look good". Rather, the record reflects that the Veteran went to sick call for a variety of complaints, only one of which was for a sinus headache. Moreover, separation proceedings were begun against the Veteran in June 1983; however, he was not discharged until October 1983. If he had sinusitis in that four month period, there would be no logical reason for him to fail to seek treatment; that is, he did not need to worry about repercussions and possibly be separated for being unfit because he was already under separation proceedings for drug abuse. 

Moreover, the Veteran's report of medical history for separation purposes reflects that he denied ever having had sinusitis. Notably, he listed having had swollen or painful joints, dizziness or fainting spells, cramps in his legs, and a painful or trick shoulder or elbow. The Board finds that if he had had chronic sinusitis in service, it would have been reasonable for him to have reported it when he reported his other complaints. As the Veteran was already being separated from service, and reporting other complaints, there would be no reasonable reason for him to not report sinus complaints if he had them. His report of medication examination was normal. 

The Veteran testified at the 2011 DRO hearing that he feels like he constantly has a cold. (See DRO hearing transcript, page 5.) In this regard, the Board notes that, as mentioned above, the Veteran's August 1980 report of medical history for entrance purposes reflects that he reported that he had chronic or frequent colds, in that they occurred once a month and lasted three days. However, there is no competent credible evidence that the Veteran had numerous colds in service, or in the decade after separation from service. To the contrary, the Veteran denied frequent colds upon separation. 

The Veteran also testified at the 2011 DRO hearing that in service, he had breathing problems and sleeping problems. As noted above, the Veteran was seen in service for a possible strep throat infection, tonsillitis and one time to rule out bronchitis. The Board finds that if the Veteran had sinusitis at those times, it would have been reasonable for the examiner to have noticed it and for the examiner to have noted it in the record. Moreover, with regard to sleep problems, the Veteran denied frequent trouble sleeping on his report of medical history for separation purposes.

The Board finds that the clinical records contemporaneous to service are more probative than statements made decades later for compensation purposes. See Cartright v. Derwinski, 2 Vet. App.24, 25 (1991) (finding that, while the Board may not ignore a Veteran's testimony simply because he or she is an interested party and stands to gain monetary benefits, personal interest may affect the credibility of the evidence); see also Caluza v. Brown, 7 Vet. App. 498, 510-511 (1995) (credibility can be generally evaluated by a showing of interest, bias, or inconsistent statements, and the demeanor of the witness, facial plausibility of the testimony, and the consistency of the testimony).

The Veteran testified at the Board hearing that he gets sinus infections approximately twice a year since approximately 1982 or 1983 (See Board hearing transcript, pages 5 and 6.) The Board finds that any such statement is less than credible given the record as a whole. 

Private records do not support a finding of chronic sinusitis since service. Private records reflect that the Veteran was seen for salabrasion of a tattoo (four times in June 1984), diarrhea (July 1986), and a left ankle injury doing a back flip (twice in July 1992). They are negative for any complaints of, or treatment for, sinusitis during this time. 

A January 1995 private record reflects that the Veteran sought treatment to discuss smoking cessation. It was noted that he had not been seen for "many years". It was also noted that other than wishing to stop smoking, the Veteran "apparently is otherwise healthy [without] any present medical problems, medicines, or allergies." 

The Veteran was seen for other complaints in the following years, to include the following: left elbow (February 1995 on two occasions, March 1995), body rash (December 1997), left ear pain with drainage (September 1998), left foot and ankle (twice in July 1999), and left great toe pain (March 2000). Again, the records are negative for any complaints of, or treatment for, chronic sinusitis since service. 

A November 1996 private record reflects that the Veteran sought treatment for a one month history of headaches and chest pain which he attributed to working with solvents, hydrocarbons, and lacquers at a furniture refinishing place. It was noted that he had been working there eight months and started to develop those symptoms. The record also reflects that the Veteran was a smoker. Upon examination, his nose was clear. A CT of the head was normal. 

A December 2004 private record reflects that the Veteran sought treatment for occupational exposure. It was noted that he had been working for the same company for approximately two years, and was sent from his carpenter job to do some destruction at another facility. He reported that he was exposed to asbestos. It was noted that the Veteran had a distant history of bronchitis, and smokes a pack a day. It was noted that the Veteran reported that he now had drainage from his nose that he had never had. After examination, he was assessed with bronchitis and an exacerbation of COPD. He was prescribed Nasonex nasal spray. 

A September 2005 VA treatment record notes that the Veteran was seen for an initial VA history and physical. It was noted that the Veteran had general poor health due to being a smoker for 27 years. It was further noted that the Veteran reported left ear hearing loss, dizziness with occasional tinnitus, heart tightness/squeezing, wheezing and occasional shortness of breath and yellow sputum, having stress, and constantly having to blow his nose, but also he denied chronic nasal discharge/drainage. Upon examination, the Veteran's sinuses were nontender to palpation with no evidence of swelling, erythema, exudates or ulceration. 

The earliest post service clinical record of a sinus complaint is more than two decades after separation from service. The lapse of time between service separation and the earliest documentation of current disability is a factor for consideration in deciding a service connection claim. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

A February 2006 private record reflects that the Veteran sought treatment for cough and cold symptoms for the past several days. His sinuses are noted to be "quite tender to palpation, especially on the right."

An October 2008 VA treatment record noted that he reported experiencing sinus pain. In November 2010, the Veteran underwent a computed axial tomography (CT) scan which revealed evidence of sinusitis. A January 2011 VA treatment record reflects that the Veteran underwent an MRI scan which revealed acute sinusitis.

In January 2011, the Veteran was afforded a VA examination to determine the nature and etiology of his sinus problems. He complained of lightheadedness and difficulty with breathing out of the left side of his nose. He denied taking any medications. He reported being treated twice since 2005 for sinusitis and respiratory symptoms. He did not have any purulent discharge. The examiner noted that the Veteran was a current smoker and had a 60 pack/year history of smoking. 

Upon examination, the examiner found no focalized sinus tenderness upon percussion, and an external inspection revealed the end of the Veteran's nose tuned to his right just a small amount. There was no mucopurulent drainage seen in either nostril, both nostrils were patent, and the pharynx revealed no posterior drainage. 

The examiner diagnosed the Veteran with lightheadedness and noted a subjective history of nasal fracture. He opined that the Veteran's ear, nose and throat ("ENT") symptoms were not caused by or a result of military service. He noted that the Veteran was treated for acute and transitory respiratory conditions more than 27 years prior to the VA examination, and there was no evidence of a chronic sinus disease since that time. The examiner found no objective medical evidence showing a chronic nasal disease related to incidents in service.

In March 2012, the Veteran was afforded a second VA examination for his sinus problems. The examiner noted the Veteran's reports of sustaining a nasal fracture in 1982 and claims of suffering from a chronic sinus condition since that time. He also noted an October 2011 medical record that reflected the Veteran had sinusitis. However, the March 2012 VA examiner noted that the Veteran did not presently have sinusitis. In his opinion, the VA examiner stated that the Veteran had episodic sinus infections related to his work. The examiner noted that an extensive review of the Veteran's records indicates no documented sinus infections from 1990 to 2006. There was an episode of sinus tenderness in 2006 and sinus infections in 2010 and 2011. As a result, the examiner concluded that the Veteran's nasal septal deviation was not a factor in causing recurrent sinus infections or sinus disease, and he concluded that his work as a cabinet maker has aggravated the Veteran's sinus congestion. In a July 2012 addendum, the examiner noted that the Veteran's post service sinus infections were isolated and episodic and not a chronic disability incurred in service. 

The Board finds the negative nexus opinions from the VA examiners have considerable probative weight. The opinions were provided following examination of the Veteran and a review of the claims file. The examiners addressed the Veteran's assertions as to the origin of his sinus problems and provided detailed rationales for their conclusions that the Veteran's episodic sinus problems were not causally related to service, and were unrelated and not aggravated by his deviated nasal septum. Monzingo v. Shinseki, 26 Vet. App. 97, 105 (2012) (examination reports are adequate when they sufficiently inform the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion).

In addition, the Board finds, as noted above, that the Veteran is less than credible as to continuity of symptoms; thus, such allegations need not have been considered by the examiners. 

The Board has considered the lay statements, but finds that they lack sufficient probative value. D. K. has stated that he remembers that the Veteran had a broken nose in service; however, this is not the sole probative factor with regard to the Veteran's current sinus problems. Moreover, the examiners considered the Veteran's claims as to an in-service injury and his deviated septum. The clinical opinions are more probative than a lay opinion as they are based on medical training, and a review of the clinical records.

L.R. submitted a statement dated in May 2012, in which she stated that she had known the Veteran for 15 years, or since approximately 1997. Thus, she did not know the Veteran while he was in service, or in the decade after separation from service. Therefore, she is not competent to state whether he had sinusitis or symptoms of such during that period. While she is competent to state that she has seen the Veteran blow his nose, she has not been shown to be competent to provide a clinical diagnosis of sinusitis or provide a competent opinion as to the etiology of a chronic disability. 

T.D. submitted a statement in which he stated that the Veteran had a crooked nose when he got out of the military. He also stated that he and the Veteran have lived together numerous times and he knows that the Veteran is a woodworker and has "always felt congested after work, constantly breathing though his mouth and not being able to breathe through his nose, and constantly sneezing." T.D. also stated that the Veteran snores, and he has seen the Veteran use nasal decongestion.

T.D. has not been shown to have the experience, training, and education, necessary to render a competent opinion as to the etiology of any sinus problem which the Veteran may have. Moreover, the central issue at hand is not whether the Veteran has had a crooked nose. At issue is whether the Veteran has had a chronic sinusitis disability since service, or a current sinusitis disability causally related to, or aggravated by, service or a service-connected disability. The examiners have considered that the Veteran was noted to have a normal septum in 2010, a deviated septum in 2011, and surgery to correct the deviated septum in 2011. As noted above, the clinical opinions are more probative than a lay opinion as they are based on medical training, and a review of the clinical records.

Sinusitis is defined as an inflammation of a sinus. While the Veteran is competent to report pain, nasal discharge, and nasal congestion, he has not been shown to be able to diagnosis an actual inflammation of a nasal sinus, or to provide a competent opinion as to the etiology of such symptoms, especially in light of his extensive history working with chemicals and woodworking, and his history of smoking. In addition, the lay witnesses are competent to state what they have witnessed (e.g. sneezing, snoring); however, they have not been shown to be able to provide a competent diagnosis of chronic sinusitis, or an etiology as to such, especially in light of the Veteran's extensive work history with chemicals and woodworking and his extensive history of smoking. Based on the foregoing, the Board finds that the lay opinions do not constitute competent medical evidence and lacks probative value. see Kahana v. Shinseki, 24 Vet.App. 428, 435 (2011). 

Finally, the Board notes that chronic sinusitis is not a disability listed in 38 C.F.R. § 3.309, which is given presumption service connection if it manifests to a certain degree within a year of separation from service. The term "chronic disease," whether as shown during service or manifest to a compensable degree within a presumptive window following service, applies only to those disabilities listed in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

In sum, the STRs do not support chronic sinusitis in service. Post service treatment records show that the Veteran's sinusitis has been acute in nature, and two VA examiners have concluded that his sinus symptoms are not related to either service or his deviated nasal septum. 

After a review of all the evidence, lay and medical, the Board finds that the weight of the evidence of record is against the Veteran's claim for service connection for sinusitis. As the preponderance of the evidence is against the claim, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990). 


ORDER

Entitlement to service connection for sinusitis, to include as secondary to a service-connected deviated nasal septum, is denied.




____________________________________________
MICHAEL MARTIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs