Citation Nr: 1719114 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 12-11 733 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to service connection for sleep apnea.

2. Entitlement to service connection for diabetes mellitus.

3. Entitlement to service connection for hypertension.

4. Entitlement to service connection for headaches.



REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

B. H., Counsel
INTRODUCTION

The Veteran served on active duty from September 1979 to September 1999.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a November 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia, which denied the Veteran's claims of an increased rating for left inguinal hernia repair scar and service connection for obstructive sleep apnea, diabetes mellitus type II, hypertension, headaches, exposure the tuberculosis virus (positive TB tine test), chronic cholecystitis postoperative gall bladder removal, and chronic fatigue syndrome. In September 2009 the Veteran filed a notice of disagreement with the denials of service connection for sleep apnea, diabetes, hypertension, headaches, and stomach problems. The RO issued a statement of the case in March 2012. In May 2012, the Veteran perfected his appeal on the issues of service connection for sleep apnea, diabetes mellitus type II, hypertension, and headaches only.

In his May 2012 VA Form 9, the Veteran requested a Board hearing at a local VA office. In an August 2014 communication, the Veteran withdrew this request. See 38 C.F.R. § 20.702(e) (2016).

In December 2014, the Board remanded this case for further development. There has been substantial compliance with those remand directives.

The issues of service connection hypertension and headaches are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. Sleep apnea did not have its onset during active service and is not etiologically related to active service.

2. Diabetes mellitus did not have its onset during active service, did not manifest to a compensable degree within one year of service, and is not etiologically related to active service.


CONCLUSIONS OF LAW

1. The criteria for service connection for sleep apnea have not all been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2016).

2. The criteria for service connection for diabetes mellitus, type II, have not all been met. 38 U.S.C.A. §§ 1101, 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. See e.g. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2016). In the instant case, VA provided adequate notice in a letter sent to the Veteran in December 2007 and provided additional notice in a letter sent to the Veteran in September 2008. 

VA has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement of relevant treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Service and VA treatment records are associated with the claims file. VA provided relevant examinations as discussed in further on in the decision.

There is no indication of additional existing evidence that is necessary for a fair adjudication of the claim that is the subject of this appeal. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist. 


II. Service Connection - Sleep Apnea

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2016). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"- the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

The record shows that the Veteran was diagnosed with sleep apnea following a March 2005 sleep study. The question is whether there is a nexus between his current sleep apnea and service.

The Veteran's service treatment records are silent as to any complaints or treatment for sleep apnea. The Veteran reported a history of snoring beginning in service. In her December 2007 statement, the Veteran's wife described his excessive snoring during service. She also stated that, beginning while the Veteran was stationed in Colorado, she noticed that he would stop breathing and would gasp for air or let out a loud noise when his breathing resumed. She stated that after deployment, the Veteran's physician had urged him to see a sleep specialist, but he refused until he heard about Reggie White's death due to sleep apnea. Then he requested a referral to a sleep specialist. This is partially corroborated by an earlier, March 2003 private treatment record that shows an assessment of rule out sleep apnea. The Board takes administrative notice of Reggie White's death in December 2004, which was after the March 2003 record and before the March 2005 sleep study.

December 1996 service treatment records document that he sought treatment for sinus congestion of one month duration, including that he had changes in sleep patterns due to snoring that was attributed to congestion. He was assessed with a probable sinus infection. The Veteran reported sinus problems in his May 1999 Report of Medical Assessment, but not sleep problems.

To answer the nexus question, the Veteran underwent a May 2015 VA examination. This examiner found that the Veteran's sleep apnea was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event or illness, noting that he was first diagnosed with sleep apnea in 2005, six years after his separation from service. Although the rationale does not explicitly address the lay contentions of a history of snoring and episodes of breath stoppage in his sleep since service, it is clear from the opinion that the examiner, after interviewing the Veteran, considered this history but did not find it to be evidence that his sleep apnea began during service. See Monzingo v. Shinseki, 26 Vet. App. 97, 106 (2012) (explaining that in determining whether an expert opinion is adequate, the opinion must be read as a whole). The record does not contain a positive medical nexus opinion.

To the extent that the Veteran believes his sleep apnea is related to his military service, the Board notes that the competence of such lay nexus opinions depends on the question at issue and the particular facts of the case.

As to non-expert or lay opinions with regard to diagnoses or a relationship of a condition to service ("nexus"), whether such opinions are competent evidence depends on the question at issue and the particular facts of the case. 

Although it is error to categorically reject a non-expert nexus opinion, not all questions of nexus are subject to non-expert opinion. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). Whether a layperson is competent to provide a nexus opinion depends on the facts of the particular case. In Davidson, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) drew from its earlier decision in Jandreau v. Nicholson to explain its holding. Id. 

In that earlier decision, the Federal Circuit addressed the competency of lay diagnoses, stating as follows: "[l]ay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional." Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

The Federal Circuit provided an example, stating that a layperson would be competent to identify a simple condition such as a broken leg, but not competent to provide evidence as to a more complex medical question such as a form of cancer. Id. at n.4. 

Also of note is that the Veterans Court has explained that non-expert witnesses are competent to report that which they have observed with their own senses. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). 

Taking Davidson, Jandreau, and Layno together, leads the Board to the conclusion that the complexity of the question and whether a nexus opinion could be rendered based on personal observation are factors in determining whether a non-expert nexus opinion or diagnosis is competent evidence. 

The Veteran, his mother, and E.J.B. have provided lay evidence of snoring since service. A history of snoring is not tantamount to a history of sleep apnea. The record does not establish that any of these individuals had the necessary training or expertise to differentiate between snoring and sleep apnea. As such, this is not the type of lay-observable cause-and-effect relationship contemplated by Jandreau. Thus, the Veteran, his mother, and E.J.B. are not competent to provide a nexus opinion in this case.

The Veteran's wife, however, has reported additional symptoms of periods when the Veteran stopped breathing in his sleep that began in service and that a physician later suspected that this was a symptom of sleep apnea. She and the Veteran were married in December 1995, a few years prior to his retirement from service, and she stated that they had met in 1994. A January 1985 service treatment record notes that the Veteran reported sleeping problems at the time he was making career decisions. No psychiatric diagnosis was made and, ultimately, there were no significant findings that would preclude him from security access. A December 1996 service treatment record shows some changes in the Veteran's sleep pattern due to snoring that was attributed to congestion. Thus, to the extent that the Veteran reported sleep problems in service, he was evaluated and his symptoms were attributable to other conditions. The contemporaneity of the history provided by the Veteran's spouse and the treatment records leads the Board to the conclusion that the mere observation of snoring and interruptions in breathing do not by themselves lead to a conclusion of sleep apnea. Additionally, while the March 2003 private treatment record shows some concern that the Veteran's snoring might be sleep apnea, his earlier treatment records make no reference to this or to any associated symptoms. Due to this conflicting evidence, the Board finds the May 2015 VA examination to be more probative than the Veteran's wife's statement.

For the reasons stated above, the Board finds that the preponderance of evidence is against the Veteran's claim of entitlement to service connection for sleep apnea. Therefore, his appeal must be denied. There is no reasonable doubt to be resolved as to this issue. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


III. Service Connection - Diabetes

The Veteran has attributed his diabetes mellitus to his sleep apnea. Service connection may be granted on a secondary basis for a disability, which is proximately due to, or the result of an established service-connected disorder. 38 C.F.R. § 3.310. Here, as the Veteran is not service connected for sleep apnea, he cannot be awarded service connection for a condition secondary to sleep apnea. Nevertheless, the Board will address entitlement to diabetes mellitus on a direct basis.

Certain chronic diseases, including diabetes, may be presumed to have been incurred in or aggravated by service if manifest to a compensable degree within one year of discharge from service, even though there is no evidence of such disease during service. 38 U.S.C.A. §§ 1101, 1112, (West 2014); 38 C.F.R. §§ 3.307, 3.309(a) (2016). A compensable (10 percent) degree of diabetes mellitus require that this condition be manageable by restricted diet while higher levels of disability are based on requirements including insulin and regulation of activities. None of these scenarios is shown here. In this case, a July 2003 private treatment record notes a new onset of diabetes. This is reiterated in December 2014 private treatment record that cites an 11 year history of diabetes. A March 2007 private treatment record noted a history of diabetes since 2001, but there is no record from that time showing such diagnosis. Thus, the record does not show that a compensable degree of diabetes was present within one year of the Veteran's September 1999 separation from service. As such, presumptive service connection is not warranted.

The Veteran's service treatment records do not document that the Veteran had diabetes during his active duty service. 

No opinion was provided on the issue of direct service connection. VA must provide a medical examination and medical opinion when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, and (2) evidence establishing that an event, injury, or disease occurred in service or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service or with another service-connected disability, but (4) insufficient competent medical evidence on file for the VA to make a decision on the claim. McLendon v. Nicholson, 20 Vet. App. 79, 81-82 (2006). Here, the Board finds that there is no indication from the record of an in-service an event, injury, or disease to which the Veteran's current diabetes mellitus can be linked as required for direct service connection. As such, an opinion on the question of direct service connection is not necessary.

For the reasons stated above, the Board finds that the preponderance of evidence is against the Veteran's claim of entitlement to service connection for diabetes mellitus and his appeal must be denied. There is no reasonable doubt to be resolved as to this issue. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. 49 (1990).


ORDER

Service connection for sleep apnea is denied.

Service connection for diabetes mellitus is denied.


REMAND

The Veteran is also seeking service connection for hypertension. While service connection for hypertension secondary to sleep apnea is not available, more development is needed to determine if direct service connection is warranted for this condition.

For VA rating purposes, the term hypertension means that the diastolic blood pressure is predominantly 90 millimeters (mm) or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160 mm or greater with diastolic blood pressure of less than 90 mm. 38 C.F.R. § 4.104, DC 7101, Note 1.

Although the Veteran was not diagnosed with hypertension during his active duty service and the majority of his blood pressure reading were below 90mm diastolic and below 160 mm systolic, his service treatment records do show elevated blood pressure readings in January 1985 (145/98 following a right hand injury), December 1989 (134/96 on a periodic reading during an emergency room visit), November 1994 (160/104 during sinusitis treatment), and June 1995 (158/92 during treatment for low back pain). A medical opinion is necessary to determine whether these reading suggest an in-service onset of hypertension and to determine whether the Veteran's current hypertension is etiologically related to his active duty service.

In a December 2014 brief, the Veteran's representative stated that the Veteran began having headaches following his well-documented in-service motor vehicle accident in August 1980. His service treatment records show complaints of headaches in August 1997. The record does not contain a medical nexus opinion on this matter. Alternately, the record does contain a September 2013 private treatment record, which attributed the Veteran's headache to his hypertension. Thus, if service connection is established for hypertension, he may be entitled to service connection for headaches on a secondary basis. As such, a medical opinion is necessary to determine whether the Veteran has a headache disability that was caused by his active duty service or was caused or aggravated by his hypertension.

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA examination to determine the nature and etiology of his hypertension. The claims file must be reviewed by the examiner and the examiner must note whether the claims file was reviewed. All indicated studies should be conducted, and all findings reported in detail.

Provide a medical opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's hypertension had its onset during active service or was caused by active service.

The examiner must support any and all opinions with a rationale.

If the examiner cannot provide the above opinion, the examiner is advised that he/she should explain why the requested opinion cannot be provided (i.e., because the limits of medical knowledge had been exhausted or because further information to assist in making the determination is needed, such as additional records and/or diagnostic studies. If the examiner cannot provide the answer because further information is needed to assist in making the determination, all reasonable steps to obtain this missing information should be exhausted before concluding that the answer cannot be provided.

2. Schedule the Veteran for a VA examination by an appropriately qualified examiner to determine the nature and etiology of any current headache condition. The claims file must be reviewed by the examiner and the examiner must note whether the claims file was reviewed. All indicated studies should be conducted, and all findings reported in detail.

a. Provide a medical opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that any headache condition had onset during active service or was caused by active service, to include the August 1980 motor vehicle accident.

b. Provide a medical opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that any headache condition was caused or chronically worsened beyond its natural progression (aggravated) by the Veteran's hypertension.

The examiner must support any and all opinions with a rationale.

If the examiner cannot provide any of the above opinions, the examiner is advised that he/she should explain why the requested opinion cannot be provided (i.e., because the limits of medical knowledge had been exhausted or because further information to assist in making the determination is needed, such as additional records and/or diagnostic studies. If the examiner cannot provide the answer because further information is needed to assist in making the determination, all reasonable steps to obtain this missing information should be exhausted before concluding that the answer cannot be provided.

3. Then, readjudicate the Veteran's claims of service connection for hypertension and headaches. If any benefit sought on appeal remains denied, provide a supplemental statement of the case to the Veteran and his representative, and allow an appropriate period of time in which to respond thereto before returning the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate 


(CONTINUED ON NEXT PAGE)


action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
JAMES G. REINHART
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs