# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-1208

JAMES GOLDEN, JR., APPELLANT,

V.

DAVID J. SHULKIN, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 19, 2018                                  Decided February 23, 2018)

*Ethan F. Maron*, of Washington, District of Columbia, for the appellant.

*Sarah W. Fusina*, with whom *Meghan Flanz*, Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Selket N. Cottle*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, GREENBERG, and ALLEN, *Judges*.

GREENBERG, *Judge*: The appellant, James Golden, Jr., appeals through counsel that part of a December 30, 2015, Board of Veterans' Appeals (Board) decision that denied a disability rating in excess of 70% for post-traumatic stress disorder (PTSD).[1] Record (R.) at 15-24. The issue before the Court is whether the Board may use Global Assessment of Functioning (GAF) scores when assigning a disability rating for psychiatric claims where the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition* (2013) (DSM-5) applies. For the following reasons, the Court will vacate that part of the Board's December 30, 2015, decision on appeal and remand the matter for readjudication.

## I.

The appellant is a Vietnam War veteran who served on active duty in the U.S. Army from July 1956 to March 1978, and is a recipient of the Vietnam Service Medal with four Bronze Service

---

[1] The Board also remanded the appellant's service-connection claims for (1) bilateral hearing loss; (2) erectile dysfunction and leakage; and (3) ischemic heart disease; the issue of a total disability rating based on individual unemployability was remanded with these claims. R. at 24-36. These matters are not before the Court. *See Hampton v. Gober*, 10 Vet.App. 481, 482 (1997).

Stars. R. at 77, 397, 875 (DD Form 214). During his decorated service in Vietnam, he endured rocket and mortar attacks, and was fired upon. R. at 858, 875.

In April 2010 the appellant filed for benefits based on service connection for PTSD. R. at 927. The following month he sought treatment from a private psychiatrist for flashbacks, nightmares, weekly hallucinations, mood swings, suicidal feelings, and decreased memory. R. at 874. The psychiatrist diagnosed the appellant with PTSD and assigned a GAF score of 40. *Id.*

In September 2010 a VA examiner noted the appellant's complaints of sleep impairment, nightmares, intrusive thoughts, flashbacks, hypervigilance, irritability, difficulties in crowds, anger, avoidance, depressed mood, concentration problems, and exaggerated startled response. R. at 858-60. The appellant also reported to the examiner he had retired from his job as a corrections officer because of psychological and physical conditions. R. at 858. The examiner diagnosed the appellant with PTSD and found moderate impairment in the appellant's social adaptability and ability to maintain employment, and diagnosed him with PTSD; a GAF score of 54 was assigned. R. at 859-60. In a July 2011 rating decision, the regional office (RO) granted service connection for PTSD, and awarded a 50% disability rating. R. at 594-605.

In April 2012 the appellant underwent another VA examination where he reported depression, anxiety, chronic sleep impairment, flattened affect and memory problems. R. at 532-35. The examiner provided a GAF score of 50, finding that the appellant experienced disturbances in motivation and mood, difficulty in establishing or maintaining effective work or social relationships, a deteriorating marriage, and suicidal ideation. R. at 528-32. The appellant's PTSD disability rating was increased to 70% in November 2012. R. at 387-403. The appellant appealed the rating assigned. R. at 301-02. The matter was certified to the Board on June 17, 2015. R. at 65.

In December 2015 the Board issued the decision on appeal, denying the appellant a disability rating in excess of 70% for PTSD. R. at 15-24. The Board acknowledged, as discussed below, that the DSM-5 applied to claims certified to the Board after August 4, 2014, and that this edition of the manual had eliminated the use of GAF scores. R. at 17. The Board then discussed the appellant's various GAF scores, R. at 17, 19, 20, finding that

> GAF scores assigned during the relevant period do not provide a basis for assigning a higher rating. The Veteran's GAF scores have ranged from 40 to 54. Pursuant to the DSM-IV, a GAF score from 31 to 40 is indicative of some impairment in reality testing or communication (e.g., speech at times illogical, obscure, or irrelevant) or

major impairment in several areas, such as work, school, family relations, judgment, thinking or mood (e.g., suicidal ideation, neglects family, and is unable to work). A GAF score from 41 to 50 is indicative of serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Scores from 51 to 60 reflect moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

While the Veteran's GAF scores have fluctuated over time, his lowest score assigned – 40 in May 2010 – is consistent with no greater impairment than that contemplated by the assigned 70 percent rating. In fact, the Veteran has also received GAF scores that would indicate only serious or moderate symptomatology.

R. at 21-22.

## II.

The appellant argues that the Board failed to provide an adequate statement of reasons or bases when it failed to discuss favorable DSM-5 provisions. Appellant's Brief (Br.) at 4-10. At oral argument, the appellant clarified his position that he believed that GAF scores of record were still relevant evidence although the DSM-5 applied to the appellant's appeal. Oral Argument (O.A.) at 8:00-15:30, *Golden v. Shulkin*, U.S. Vet.App. 16-1208 (oral argument held Jan. 19, 2018), http://www.uscourts.cavc.gov/oral_arguments_audio.php. However, he argued that these scores must be addressed in the context of the DSM-5's acknowledgement that the GAF scale was methodologically flawed and was particularly unreliable as applied to PTSD. Appellant's Br. at 7; *see also* O.A. at 19:00-:30.

The appellant also argues that the Board erred by failing to remand the matter of extraschedular consideration as inextricably intertwined with the remanded service-connection matters. Appellant's Br. at 8. The appellant further discussed extraschedular consideration at oral argument. *See* O.A. at 2:30-:30.

The Secretary agrees with the appellant that the mere consideration of GAF scores in the Board's decision was not error and that, in fact, the Board is obligated to consider all pertinent evidence. Secretary's Br. at 6-7; *see* Appellant's Supplemental (Supp.) Br. at 2 (the Board has a "statutory obligation to consider all evidence of record" and therefore "must continue to consider GAF scores of record in claims certified to the Board after August 4, 2014"). However, the

3

Secretary's argument diverges from the appellant's in that the Secretary contends that the Board properly considered the totality of the evidence and the appellant's medical history, and that the GAF scores were just "another factor" in determining that the appellant was not entitled to a disability rating in excess of 70% for PTSD. Secretary's Br. at 8. The Secretary also contends that, in any event, any usage of the GAF scores in the Board's December 2015 decision was not prejudicial because the Board relied on the actual symptomatology to deny a higher rating. O.A. at 42:00-45:00. At oral argument, the Secretary suggested that VA's adoption of the DSM-5 was relevant to its duty to assist and that medical examiners should not use GAF scores after August 4, 2014, when providing medical opinions; however, VA adjudicators were still required to consider existing GAF scores when determining the severity of a claimant's psychological disability. O.A. at 41:00-42:00.

The Secretary also argues that the record did not reasonably raise a collective-impact extraschedular issue, and thus the appellant's argument that this matter should have been remanded as inextricably intertwined with his other remanded claims is without merit. Secretary's Br. at 9-10 (citing *Johnson v. McDonald*, 762 F.3d 1362 (Fed. Cir. 2014) and *Yancy v. McDonald*, 27 Vet.App. 484, 495-96 (2016)).

### III.

The "Global Assessment of Functioning" scale was a scale ranging from 0 to 100, that was created to reflect "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." *See* DSM-IV at 32. In other words, a GAF score was a numerical summary on a standardized scale reflecting the presence and severity of psychological symptoms and their effects. *Id.* The goal of ensuring uniformity through the use of GAF scores did not appear to have been achieved, as "[i]t was recommended that the GAF [score] be dropped from [the] DSM-5 for several reasons, including its conceptual lack of clarity (i.e. including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." DSM-5 at 16.

Effective August 4, 2014, VA amended the portion of its Schedule for Rating Disabilities dealing with mental disorders to remove outdated references to the DSM-IV and replace them with references to the DSM-5. *See* 79 Fed. Reg. 45,093, 45,094 (Aug. 4, 2014). VA adopted as final, without change, the interim final rule and clarified that the provisions of the final rule did not apply

4

to claims that were pending before the Board, this Court, or the U.S. Court of Appeals for the Federal Circuit on August 4, 2014, even if such claims were subsequently remanded to the agency of original jurisdiction. *See* 80 Fed. Reg. 14,308 (Mar. 19, 2015).

## IV.

The Court recognizes that, when the Board evaluates a disability, it is essential "that [the] disability be viewed in relation to its history," 38 C.F.R. § 4.1 (2017), and it is well established that the Board is obligated to consider all pertinent medical and lay evidence when rating a disability, *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991). To that end, the parties agree that GAF scores are at least minimally relevant as part of a veteran's psychiatric history. *See* Appellant's Br. at 7; Secretary's Br. at 6-7. However, both parties also agree that, although GAF scores were designed to help quantify and summarize the severity of symptoms associated with mental disorders, the DSM-5 eliminated GAF scores because of their "conceptual lack of clarity" and "questionable psychometrics in routine practice." DSM-5 at 16; *see also* Appellant's Br. at 6-7; Secretary's Br. at 5-6. Given that the DSM-5 abandoned the GAF scale and that VA has formally adopted the DSM-5, the Court holds that the Board errs when it uses GAF scores to assign a psychiatric rating in cases where the DSM-5 applies.

The Court disagrees with the Secretary's characterization at oral argument that the adoption of the DSM-5 pertained solely to VA examiners and the adequacy of VA examinations. See O.A. at 41:00-42:00. Although it is true that examiners no longer use these scores, an adjudicator is not permitted to rely on evidence that the American Psychiatric Association itself finds lacking in clarity and usefulness. Any reliance on evidence that expert consensus—as adopted by VA—has determined to be unreliable would be impossible to justify with an adequate statement of reasons or bases. *See* 38 U.S.C. § 7104(d)(1) ("Each decision of the Board shall include . . . a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented in the record."); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990) (finding that Congress mandated, by statute, that the Board provide a written statement of reasons or bases for its conclusions that is adequate to enable the appellant to understand the precise basis for the Board's decision and to facilitate review in this Court); *see also, e.g., Fagan v. Shinseki*, 573 F.3d 1282, 1284 (Fed. Cir. 2009) (quoting a VA examiner's statement acknowledging that considering hearing loss using a disfavored whispered test "does not

provide frequency or ear specific information and therefore does not rule out, or confirm, high frequency hearing loss").

The Court also rejects the appellant's argument that the Board must consider GAF scores to rate psychiatric disorders so long as the Board discusses how the unreliability of those scores affects the weight they should be assigned.[2] Appellant's Supp. Br. at 2, 5. It makes little sense to impose a heightened reasons-or-bases requirement by obligating the Board to discuss how the American Psychiatric Association's rejection of GAF scores should affect the weight of such evidence. Instead, the Court provides far simpler guidance: the Board should not use such evidence at all when assigning a psychiatric rating in cases where the DSM-5 applies.

The Board's rating analysis for psychiatric disorders has always been "symptom driven," meaning that "symptom[s] should be the fact finder's primary focus when deciding entitlement to a given disability rating." *Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 116-17 (Fed. Cir. 2013); *see also Bankhead v. Shulkin*, 29 Vet.App. 10, 22 (2017) (requiring VA to "engage in a holistic analysis" of the claimant's symptoms to determine the proper disability rating); *Mauerhan v. Principi*, 16 Vet.App. 436, 440-41 (2002) (VA must consider "all the evidence of record that bears on occupational and social impairment," and then "assign a disability rating that most closely reflects the level of social and occupational impairment a veteran is suffering"). The Court simply clarifies that, to the extent that the Board may have been tempted to use numerical GAF scores as a shortcut for gauging psychiatric impairment, such use would be error.

Further, the adequacy of medical examinations has never depended upon the use or inclusion of GAF scores. A medical examination is adequate "where it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability, if any, in sufficient detail so that the Board's evaluation of the claimed disability will be a fully informed one." *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007) (internal quotation marks omitted)). An examiner is tasked with thoroughly *describing* a claimant's current disability to allow an adjudicator to assign the appropriate rating, and must consider the current disability. *See Monzingo v. Shinseki*, 26 Vet.App. 97, 105 (2012) (per curiam) (holding that an adequate medical

---

[2] At oral argument, the appellant also suggested that GAF scores may be useful where the same examiner provided multiple examinations over time because the difference in GAF scores helped the adjudicator identify the examiner's opinion that a claimant's condition had changed. O.A. 12:04-12:50. However, an adequate examination must also be based "upon consideration of the veteran's prior medical history" and thus an examiner is already tasked with *explaining* any fluctuations in the severity of mental disability. *See id.* The Court therefore disagrees that GAF scores offer any added value for this purpose.

6

examination "sufficiently inform[s] the Board of a medical expert's judgment on a medical question and the essential rationale for the that opinion."). If the examiner does not provide this information with the requisite specificity, the examination is inadequate regardless of whether a GAF score is included.

Although the Secretary argues that any mention of GAF scores in this case was not prejudicial error, the Court cannot deem the inclusion of these GAF scores harmless. *See* 38 U.S.C. § 7261(b)(2) (requiring Court to "take due account of the rule of prejudicial error"). Although it is possible that the Board may have analyzed the appellant's GAF scores in response to his argument that his low GAF score of 40 entitled him to a higher rating, R. at 420-21 (Apr. 2013 Substantive Appeal), the Board did not provide this explanation, and the Court is unable to conclude that the Board's decision would have been the same had the discussion of GAF scores been removed. The Court does not hold that the Board commits prejudicial error every time the Board references GAF scores in a decision, but in this case, it is unclear whether the Board's discussion of the GAF scores was prejudicial. Therefore, remand is required for the Board to provide an adequate statement of reasons or bases for its decision.

As the Court is remanding the appellant's claim on a schedular basis, it is premature to address the appellant's arguments pertaining to extraschedular consideration. On remand, the appellant may present, and the Board must consider, any additional evidence and arguments. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). This matter is to be provided expeditious treatment. *See* 38 U.S.C. § 7112; *see also Hayburn's Case*, 2 U.S. (2 Dall.) at 410, n. ("[M]any unfortunate and meritorious [veterans], whom Congress have justly thought proper objects of immediate relief, may suffer great distress, even by a short delay, and may be utterly ruined, by a long one.").

## V.

For the foregoing reasons, the Board's December 30, 2015, decision is VACATED and the matter is REMANDED for readjudication consistent with this decision.